**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James J. MARREN,**
**Defendant–Appellant.**

No. 89–2935.

United States Court of Appeals,
Seventh Circuit.

Argued and Decided Sept. 27, 1990.

Opinion Issued Nov. 28, 1990.

Rehearing Denied Nov. 30, 1990.

Michael C. Carr, Asst. U.S. Atty., Office of the U.S. Atty., Benton, Ill., for plaintiff-appellee.

Christopher Heid, Norris City, Ill., William M. Norris, Miami, Fla., for defendant-appellant.

Before CUMMINGS, COFFEY and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

In September 1987, defendant and nineteen others were indicted on marijuana distribution charges. He was arraigned the following February, and on March 30, 1988, Stephen J. Finta of the Florida bar entered his appearance on behalf of defendant. Trial against Marren and five remaining defendants commenced on November 15, 1988. Three days later the court declared a recess until November 29.

On November 29, 1988, the government filed a motion for disqualification of Finta and for severance of defendant from the others on trial with him. The motion alleged that Mr. Finta had engaged in unethical or criminal activity. The motion was heard on the same day, with two government witnesses testifying that Mr. Finta was involved in the drug conspiracy at issue. Therefore the court disqualified Mr. Finta and declared a mistrial as to defendant Marren, who requested appointment of a new attorney, and on December 28 Christopher Heid was appointed as successor counsel to Marren. The jury trial continued against the other five defendants who were found guilty on January 30, 1989.

Marren was arraigned on a superseding indictment on March 2, 1989, and his counsel filed a motion to dismiss based upon double jeopardy. The motion was denied on August 28, resulting in this appeal.

*Timeliness of government's motion for disqualification*

When the court ended its trial recess on November 29, Assistant U.S. Attorney Carr explained to the court that he first learned of Finta's role in the alleged conspiracy during a pretrial interview of a government witness on November 23, 1988, the day before Thanksgiving. On that date, Carr learned from government witness Ball that Stephen Finta had been involved in the conspiracy. Carr then contacted government witness Wood at the suggestion of Ball, and Wood said he too had knowledge of Finta's participation in the conspiracy, causing the government to file its motion to dismiss on November 29 when the court recess had ended. Defendant asserts that the government should have brought this information to light sooner because it had a document in its possession for ten months showing that Wood had sold a plane to Finta, who "worked as a front man for James Marren." (App. 30). However, as the district court noted in its memorandum and order denying Marren's subsequent double jeopardy motion to dismiss, thousands of documents had been introduced into evidence, so that a federal prosecutor could not be expected to be aware of this one bit of information with its brief reference to Finta. The court added that there had been no showing of any bad motive in filing the motion for disqualification after jeopardy had attached (App. 6–7). Like the district judge, we accept the government's explanation as to why it was unable to file the motion for disqualification until it did.

*Adequacy of notice and opportunity to be heard on government's motion for disqualification*

■ Marren complains that the disqualification motion was heard and decided on the same day it was filed. However, Finta admitted at the hearing that he had discussed this matter "in advance at length" with Marren, that it was "no surprise," and that he and Marren "were ready to deal" with the matter when it came up. It is apparent from the record that the government acted as expeditiously as possible and that Finta should have disclosed his involvement at the beginning of the case. Indeed Finta did not ask for a continuance, and instead told Judge Foreman that unless the court wished to hear further testimony defendant would rest. Since Marren was severed from the case when Finta was disqualified, there was no need for the immediate appointment of successor counsel for him. Finta's replacement a month after the mistrial was timely.

*Justification for Finta's disqualification*

■ Finta was properly disqualified because identifiable improprieties involving him were shown and because public suspicion would outweigh any interest in his continuing representation. *United States v. Hobson*, 672 F.2d 825, 828 (11th Cir. 1982), cert. denied, 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166.

*Mistrial based on manifest necessity*

■ The double jeopardy clause of the Fifth Amendment provides that no person shall be twice put in jeopardy for the same offense, but it is well settled that retrial after a properly declared mistrial does not violate that clause. *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). However, a retrial after a mistrial is declared over a defendant's objection is prohibited unless there was "a manifest necessity" for the mistrial. *Oregon v. Kennedy*, 456 U.S. 667, 672, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982); *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824). Thus the question is whether this mistrial was based on manifest necessity.

Defendant's counsel has seemingly conceded that granting this motion to disqualify "would necessarily require a mistrial" (Record Item 531 at 45). Even apart from this concession, "manifest necessity" was clearly present. As in *United States v. Kwang Fu Peng*, 766 F.2d 82, 87 (2d Cir. 1985), the trial judge's finding of "manifest necessity" was "in large part based upon his evaluation of the likely effect upon the jury of * * * [defendant counsel's] disqualification." As in that case, "the taint that * * * [Finta's] continued representation of appellant would inject into any further proceedings outweighed appellant's Sixth Amendment interest in having counsel of his choice" because the jury would be unacceptably affected by Finta's double role as counsel and unsworn witness. See also *Dunkerley v. Hogan*, 579 F.2d 141, 145 (2d Cir.1978), cert. denied, 439 U.S. 1090, 99 S.Ct. 872, 59 L.Ed.2d 56 (1979).

In addition to the above factors, Judge Foreman's opinion marshals other reasons to satisfy the "manifest necessity" requirement. Thus the court explained that if he had not disqualified Finta and declared a mistrial, "Marren would have had an opportunity to obtain a certain reversal on appeal due to Finta's conflict of interest" despite the competing and equally legitimate demand for public justice, citing *Illinois v. Somerville*, 410 U.S. 458, 471, 93 S.Ct. 1066, 1073, 35 L.Ed.2d 425 (1973) (Defendant's App. 9). Judge Foreman also explained that without the mistrial, Finta would have had strong reason to proceed with care during his cross-examination of witnesses in order to suppress his involvement in the conspiracy, and he would hardly conduct a vigorous and competent defense of his client while tailoring his examination of witnesses to protect himself. The court added that all defendants would be prejudiced if the court did not declare a mistrial because the government could elicit testimony regarding Finta's alleged misdeeds, thereby prejudicing the others. Referring to another Second Circuit case, *United States v. Arrington*, 867 F.2d 122 (1989), cert. denied *sub nom. Davis v.*

United States, —— U.S. ——, 110 S.Ct. 70, 107 L.Ed.2d 37, here too Finta "*would have become a sworn or unsworn witness once any testimony implicating him was admitted.*" Defendant's App. 12. With all these factors in mind, the trial court's evaluation amply satisfied the manifest necessity for declaring a mistrial.

The order denying defendant's motion to dismiss is affirmed.