UNITED STATES of America, Appellee,

v.

Domenic SIMONETTI, Defendant, Appellant.

No. 93–1131.

United States Court of Appeals, First Circuit.

Heard June 9, 1993.

Decided July 20, 1993.

7. We have considered and find no merit in the     rest of appellants' arguments.

Edward S. MacColl, by Appointment of the Court, with whom Marshall J. Tinkle and Thompson, McNaboe, Ashley & Bull, Portland, ME, were on brief, for defendant, appellant.

Margaret D. McGaughey, Asst. U.S. Atty., Portland, ME, with whom Jay P. McCloskey, U.S. Atty., Bangor, ME, and Jonathan A. Toof, Asst. U.S. Atty., Portland, ME, were on brief, for appellee.

Before TORRUELLA, SELYA and CYR, Circuit Judges.

TORRUELLA, Circuit Judge.

Defendant Domenic Simonetti was charged with conspiracy to possess cocaine with intent to distribute it in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. After the trial began, the district court severed Simonetti's case from that of his codefendant and declared a mistrial over Simonetti's objection. Simonetti later moved to dismiss the indictment, alleging retrial would constitute double jeopardy in violation of his constitutional rights. The district court denied the motion and we affirm.

Prior to trial, the government released to Simonetti redacted reports of government interviews with Peter Shoureas. The reports referred to drug transactions between Shoureas and various other individuals. At trial, the government sought to prove that Domenic Simonetti (also referred to as "Nick") conspired with Shoureas and others to possess and distribute cocaine. While cross-examining Shoureas, Simonetti's attorney, Mr. Lil-

ley, discovered that the unedited reports showed that the conspiracy arguably involved another individual who was also referred to as "Nick." On different occasions during his drug trafficking career, Shoureas apparently conspired with Nicholas Skinsacos and later, defendant Domenic Simonetti. Skinsacos' name was redacted in the government's reports, however. This new information offered potentially exculpatory evidence for Simonetti because the defense could have attempted to show that the references to "Nick" implicated Skinsacos, not Simonetti.

Attorney Lilley moved to dismiss the case on the basis of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), because the government failed to disclose this exculpatory evidence before trial. In addition, Lilley informed the court that he had a conflict of interest because he previously represented Skinsacos. The district court determined that the government did not intentionally violate its disclosure duty by deleting Skinsacos' name from the Shoureas reports, but agreed that the references should have been provided to the defense.[1] As a remedy, the court ordered disclosure of all references to Skinsacos. The court concluded that the delayed disclosure did not prevent the defense from effectively presenting its case and thus denied the motion to dismiss, finding dismissal unwarranted by *Brady* or its progeny. *See United States v. Devin*, 918 F.2d 280, 289 (1st Cir.1990) (delayed disclosure does not warrant dismissal where defendant can effectively use information belatedly disclosed).[2]

Attorney Lilley's conflict of interest with Skinsacos remained, however. The district court recognized that a legitimate defense strategy would attempt to show that references to "Nick" implicated Skinsacos, not Lilley's present client, Simonetti. Lilley's ability to represent Simonetti was impaired, however, because Maine Bar Rules 3.4(e)[3] and 3.6(*l*)(1) prohibit the use of confidential information obtained in a prior representation to the detriment of the prior client or for the benefit of another party without informed

---

1. The district court deemed the oversight careless and specifically found no bad faith on the part of the prosecutor.

2. Simonetti does not specifically challenge this ruling.

3. Maine Code of Professional Responsibility Rule 3.4(e) provides:

written consent of the prior client.[4] Consequently, Lilley could not have vigorously defended Simonetti without a waiver from Skinsacos. *Cf. United States v. Marren,* 919 F.2d 61, 63 (7th Cir.1990).

The district court granted a continuance for several days in an effort to resolve the conflict of interest. Over Simonetti's objection, the court eventually severed Simonetti's case from his codefendant[5] and concluded that manifest necessity justified declaring a mistrial. Simonetti moved to dismiss the case on double jeopardy grounds and the district court denied the motion, finding that a new trial would not violate the Double Jeopardy Clause. This appeal followed.

■ The Double Jeopardy Clause of the Fifth Amendment provides that no person shall be twice placed in jeopardy for the same offense. Retrial after a properly declared mistrial does not automatically offend the Double Jeopardy Clause. *Arizona v. Washington,* 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978). Where mistrial is declared over defendant's objection, retrial is permissible only if the mistrial was justified by "manifest necessity." *Id.; United States v. Pérez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824). The Supreme Court has interpreted "manifest necessity" to mean a "high degree" of necessity. *Arizona,* 434 U.S. at 505, 98 S.Ct. at 830; *see Brady v. Samaha,* 667 F.2d 224, 228 (1st Cir.1981). "The 'manifest necessity' standard provides sufficient protection to the defendant's interests in having his case finally decided by the jury first selected while at the same time maintaining 'the public's interest in fair trials designed to end in just judgments.'" *Oregon v. Kennedy,* 456 U.S. 667, 672, 102 S.Ct.

2083, 2087, 72 L.Ed.2d 416 (1982) (quoting *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949)). The prosecution bears a heavy burden in demonstrating that "manifest necessity" exists when the defendant's "valued right to have his trial completed by a particular tribunal" is implicated. *Arizona,* 434 U.S. at 503 & n. 11, 505, 98 S.Ct. at 829 & n. 11, 830. Moreover, the Court has consistently emphasized that the standard cannot be applied mechanically or "without attention to the particular problem confronting the trial judge." *Id.* at 506, 98 S.Ct. at 831; *see also Illinois v. Somerville,* 410 U.S. 458, 462, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425 (1973).

"Our duty as a reviewing court is to assure ourselves that the trial judge engaged in a 'scrupulous exercise of judicial discretion' in making the decision that a mistrial was necessary."[6] *Samaha,* 667 F.2d at 228 (quoting *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971)). In the past, we have considered significant whether the trial judge (1) considered alternatives to a mistrial, (2) afforded counsel an opportunity to be heard on the issue, and (3) decided precipitously or after sufficient reflection. *United States v. Ramírez,* 884 F.2d 1524, 1528–29 (1st Cir.1989); *Samaha,* 667 F.2d at 228–29; *see also Arizona,* 434 U.S. at 515–16, 98 S.Ct. at 835–36.

■ In the present case, the district court judge scrupulously exercised his discretion. After the conflict of interest was first discovered, the trial judge held a conference in chambers to discuss possible remedies. He suggested several options: dismissal, declaration of mistrial, or continuance to permit Simonetti to retain other counsel or to obtain

---

A lawyer shall not accept employment adverse to a former client without that client's informed written consent if such new employment involves the subject matter of the former employment or may involve the use of confidential information obtained through such former employment.

4. Maine Code of Professional Responsibility Rule 3.6(*l*)(1) provides in relevant part:
   [A] lawyer shall not, without the informed written consent of the client, knowingly reveal a confidence or secret of the client; use such confidence or secret to the disadvantage of the client; or use such confidence or secret to the advantage of the lawyer or a third person.

5. Counsel for codefendant argued that further delay would prejudice his client.

6. Contrary to Simonetti's suggestion, this is not a case involving prosecutorial misconduct designed to "harass or to achieve tactical advantage over the accused," which would warrant review under the "strictest scrutiny" standard. *See Arizona,* 434 U.S. at 508, 98 S.Ct. at 831. The district court specifically found that neither party could be faulted for failing to discover the conflict of interest prior to trial. *See United States v. Simonetti,* No. 92–22, slip op. at 1–2 & n. 2 (D.Me. Jan. 27, 1993).

a waiver from Skinsacos. The judge then called a recess to let counsel research the problem and review all options. Later, the hearing resumed, only to be continued on several more occasions over the next several days. The district judge specifically requested alternative remedies from the parties and provided ample time to obtain the waiver from Skinsacos. Simonetti ultimately engaged substitute counsel who did not have a conflict of interest. The judge asked new counsel whether he could suggest other remedies, whether Simonetti wished to continue the case with his new attorney, or whether a waiver could be obtained from Skinsacos. The court even considered continuing the case to allow new counsel time to prepare the case from where Attorney Lilley left off. This solution was rejected because a continuance would have been unfairly prejudicial to codefendant. Likewise, to proceed with the codefendant and later reconvene the jury to hear Simonetti's case was not viable because the judge believed that the jury could not return a fair verdict under such circumstances.

In sum, the judge considered alternatives, implored the original counsel and new counsel to proffer remedies, and devoted ample time and energy to resolve the conflict of interest problem, while remaining mindful of Simonetti's strong interest in completing his trial before the first jury impaneled. The court could not devise a remedy that would resolve the conflict of interest and permit the case to continue before the original jury. As a result, mistrial was a manifest necessity. The district court therefore did not abuse its discretion by granting the mistrial over defendant's objection.

■ Simonetti also argues that, even absent less drastic alternatives to mistrial, retrial is barred where mistrial is caused by governmental misconduct. Simonetti concedes that this is not a case in which the prosecution intentionally goaded or provoked the mistrial. *See Oregon,* 456 U.S. at 679, 102 S.Ct. at 2091. However, retrial also may be barred where "egregious or unfair behavior" by the prosecution "could be considered, objectively, as equivalent to an intentional effort to provoke mistrial." *United States v. Larouche Campaign,* 866 F.2d 512, 518 (1st Cir.1989). The inquiry into the prosecutor's

intent calls for a finding of fact. *Id.* The district court found that the failure to disclose the references to Nick Skinsacos in the redacted reports was inadvertent, although careless. *See supra* notes 1 & 6. The record evidence supports this factual finding.

Simonetti finally urges that we adopt the novel rule of *Hylton v. Eighth Judicial Dist. Court, Dept. IV,* 103 Nev. 418, 743 P.2d 622 (1987), that bars retrial where governmental misconduct which rises to the level of "inexcusable negligence" causes a mistrial. In this case, the mistrial resulted from the conflict of interest, not the unintentional failure to disclose potentially exculpatory evidence, *see supra* note 1. Under these circumstances, the government simply could not have known that Attorney Lilley's law firm had represented Skinsacos, who was only a peripheral player in Simonetti's case, some five years earlier. We thus do not confront a case in which inexcusable neglect by the prosecutor caused the mistrial, and consequently, have no cause to consider the wisdom of Nevada's rule.

We *affirm* the decision of the district court as the Double Jeopardy Clause poses no bar to a new trial.