# United States Court of Appeals
## For the First Circuit

---

No. 01-2233

UNITED STATES OF AMERICA,

Appellee,

v.

JOEL KEENE,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

---

Before

Selya, Circuit Judge,

Stahl, Senior Circuit Judge,

and Lynch, Circuit Judge.

---

Taylor D. Fawns, with whom William Maselli was on brief, for appellant.
Margaret D. McGaughey, Assistant United States Attorney, with whom Paula D. Silsby, United States Attorney, was on brief, for appellee.

---

April 29, 2002

---

**SELYA, Circuit Judge.** In this interlocutory appeal, defendant-appellant Joel Keene beseeches us to reverse an order of the district court refusing to dismiss an indictment on double jeopardy grounds. The appellant asseverates that the district court should have acknowledged that it acted too hastily in declaring a mistrial, over the appellant's objection, instead of exhorting the jury to deliberate further, and, accordingly, should have barred further prosecution of the charges against him. Finding this asseveration unpersuasive, we affirm the district court's denial of the motion to dismiss.

## I. BACKGROUND

A federal grand jury sitting in the District of Maine indicted the appellant on drug-trafficking and criminal forfeiture charges. See 21 U.S.C. §§ 841(a)(1), 853. Trial on the drug-trafficking counts commenced on June 25, 2001. By early afternoon, the government had completed its case in chief. The court adjourned at that juncture. The jurors returned the next morning and the appellant began to present his defense. Later that day, the appellant rested, the attorneys made their closing arguments, and the court charged the jury.

The jurors began deliberating at approximately 1:00 p.m. on June 26. Shortly thereafter they sent the judge a note. Finding the note opaque, the judge conferred with counsel. An

exchange of notes followed, punctuated by periodic conferences between the judge and the lawyers. Eventually, the jury requested that certain testimony be read back. After again conferring with counsel, the judge acceded to the request but limited the scope of the read-back. The jury then retired to continue its deliberations.

Within a relatively short time, the foreperson informed the court that the members of the jury could not agree upon a verdict. The judge consulted with counsel, who jointly suggested that the jurors be allowed to go home for the day and resume deliberations the next morning. Concerned that this course of action, unexplained, might lead jurors to conclude that they would be obliged to deliberate indefinitely, the judge told the lawyers that he preferred to provide the jurors with instructions of the sort customarily given to deadlocked juries and offer them the opportunity to choose between going home or continuing their deliberations. The attorneys agreed to this proposal.

The judge thereupon returned the jurors to the courtroom and gave a modified <u>Allen</u> charge. <u>See</u> <u>Allen</u> v. <u>United States</u>, 164 U.S. 492, 501 (1896). He concluded his remarks by presenting the jurors with a choice of how to proceed. After

-4-

whispered consultations in the jury box, the foreperson advised the court that the jurors wished to continue deliberating.

Approximately an hour and a half later — at 6:22 p.m. — the jurors sent a note to the judge, reporting that they were "truly deadlocked." To emphasize the point, the foreperson underlined a word fragment in the phrase "can<u>not</u> come to a unanimous decision." The judge conferred with counsel, and all parties concurred that it would be premature to abandon hope for a unanimous verdict. The judge, with the lawyers' approbation, agreed to send the jurors home and bring them back the next morning to resume deliberations. However, defense counsel asked for something more: a supplemental instruction that would in essence amount to a second modified <u>Allen</u> charge. The judge demurred, citing this court's decision in <u>United States</u> v. <u>Barone</u>, 114 F.3d 1284, 1305 (1st Cir. 1997), and dismissed the jury for the day without giving the requested instruction.

The jurors reconvened on June 27. Almost immediately, they asked that additional testimony be read back. After soliciting the attorneys' views and engaging in an exchange of notes with the jury, the court permitted a read-back of certain testimony. The jury retired to continue its deliberations at about 10:44 a.m. Around noontime, the jurors transmitted yet another note to the judge declaring that "we can<u>not</u> come to a

-5-

unanimous decision" (emphasis in the original). This time, each juror signed the communiqué.

The judge promptly conferred with counsel. The defense attorney renewed his request for a second modified <u>Allen</u> charge. The judge denied the request, explaining that the case did not present special circumstances of a type or kind that would warrant such an unusual measure. Instead, the judge sent the jury a note inquiring whether there was any possibility that, in time, it might arrive at a unanimous decision on either of the two counts. In a reply note, the jury responded in the negative (again emphasizing the word fragment "<u>not</u>"). Over the appellant's objection, the judge declared the jury hopelessly deadlocked and ordered a mistrial.

In due course, the appellant moved to dismiss the indictment, arguing that a retrial would offend the Double Jeopardy Clause. The district court wrote a thoughtful rescript in which it denied the motion. <u>United States</u> v. <u>Keene</u>, 158 F. Supp. 2d 93, 95 (D. Me. 2001). This interlocutory appeal followed.

## II.  ANALYSIS

Under ordinary circumstances, a defendant cannot take an immediate appeal from an interlocutory order in a criminal case. There is a well-recognized exception, however, that

-6-

materializes when the defendant is able to mount a colorable claim that further proceedings in the trial court will constitute double jeopardy.  See Abney v. United States, 431 U.S. 651, 662 (1977); United States v. Stoller, 78 F.3d 710, 714 (1st Cir. 1996).  This is such a case.

We divide our analysis into segments.  We begin by limning the manner in which the district court's power to declare mistrials implicates double jeopardy principles.  We then turn to the merits of the appellant's claim.

### A.  Double Jeopardy Principles.

The Double Jeopardy Clause ensures that no "person be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  This provision "embodies a triumvirate of safeguards," United States v. Ortiz-Alarcon, 917 F.2d 651, 653 (1st Cir. 1990), including protection against serial attempts by the government to convict a defendant on a single charge.  The concept behind this branch of the Double Jeopardy Clause "is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal, and . . . enhancing the possibility that even though innocent he may be found guilty."  Green v. United States, 355 U.S. 184, 187-88 (1957).

When a mistrial is declared prior to the rendition of a jury verdict, double jeopardy principles sometimes may bar further prosecution of the charge.  E.g., United States v. Pierce, 593 F.2d 415, 419-20 (1st Cir. 1979) (foreclosing a retrial, on double jeopardy grounds, following the declaration of a mistrial over objection and without sufficient exploration of available alternatives).  But that is the exception to the rule:  an appropriately declared mistrial does not insult principles of double jeopardy (and, therefore, does not bar retrial).  See Arizona v. Washington, 434 U.S. 497, 505 (1978); United States v. Simonetti, 998 F.2d 39, 41 (1st Cir. 1993). Consequently, the denial of a motion to dismiss after a jury deadlock usually will not violate the Double Jeopardy Clause. Richardson v. United States, 468 U.S. 317, 324 (1984); United States v. Barbioni, 62 F.3d 5, 7 (1st Cir. 1995).  It is against this backdrop that we evaluate the merits of the instant appeal.

Our standard of review is intricate.  Technically, we are called upon to review the district court's denial of a motion to dismiss on double jeopardy grounds.  On its face, that motion presents a pure question of law.  As such, it ordinarily would engender de novo review.  E.g., United States v. Morris, 99 F.3d 476, 478 (1st Cir. 1996).

Here, however, there is a wrinkle. In certain cases, the correctness of the district court's decision ultimately hinges on the justification for ordering a mistrial. The decision as to whether to declare a mistrial speaks to the informed discretion of the district court, and is customarily reviewed only for abuse of that discretion. See United States v. Pierro, 32 F.3d 611, 617 (1st Cir. 1994). Where, as here, a motion to dismiss on double jeopardy grounds trails in the wake of the district court's declaration of a mistrial, both the Supreme Court and this court have consistently applied an abuse of discretion standard in reviewing appeals from the denial of such motions. E.g., Arizona v. Washington, 434 U.S. at 514 (explaining that, in such situations, "reviewing courts have an obligation to satisfy themselves that . . . the trial judge exercised sound discretion in declaring a mistrial") (internal quotation marks omitted); United States v. Jorn, 400 U.S. 470, 486 (1971) (finding preclusion on double jeopardy grounds because "the trial judge . . . abused his discretion in discharging the jury"); Barbioni, 62 F.3d at 7 (adopting abuse of discretion standard in similar circumstances); Simonetti, 998 F.2d at 42 (same). We therefore review the district court's decision here for abuse of discretion.

We caution however, that in cases of this genre, review for abuse of discretion entails heightened rigor. See Jorn, 400 U.S. at 485 (demanding a "scrupulous exercise of judicial discretion" in this context). As we use the term, it encompasses multiple layers of inquiry. See Koon v. United States, 518 U.S. 81, 98-100 (1996). In the course of such review, "we accept the trial court's factual findings only to the extent that they are not clearly erroneous." United States v. Bradshaw, 281 F.3d 278, 291 (1st Cir. 2002). In contrast, we evaluate the district court's articulation of applicable legal rules de novo, cognizant that a mistake of law is equivalent to an abuse of discretion. In re Grand Jury Subpoena, 138 F.3d 442, 444 (1st Cir. 1998); United States v. Snyder, 136 F.3d 65, 67 (1st Cir. 1998). Only then do we inquire whether, in view of all the facts and circumstances, the trial court's finding of a manifest necessity to discharge the jury and declare a mistrial constitutes a misuse of its discretion. See Illinois v. Somerville, 410 U.S. 458, 462-63 (1973); Brady v. Samaha, 667 F.2d 224, 228 (1st Cir. 1981).

## B. **The Merits**.

The defendant's right to have a particular jury, once sworn, conclude the trial of his case is of a high order of importance. Consequently, the prosecution bears the burden of

-10-

justifying the declaration of a mistrial in a criminal case. <u>Arizona</u> v. <u>Washington</u>, 434 U.S. at 505. The shorthand reference for the requisite quantum of justification has come to be known as "manifest necessity." The Supreme Court enunciated this standard nearly two centuries ago:

> [I]n all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. . . . [T]he power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes . . . .

<u>United States</u> v. <u>Perez</u>, 22 U.S. (9 Wheat.) 579, 580 (1824).

In previous cases, we have deemed a variety of factors relevant to the trier's determination of whether manifest necessity existed. These include: (1) whether counsel were afforded an opportunity to be heard on the issue; (2) whether alternatives to a mistrial were explored; and (3) whether the judge's decision was made after sufficient reflection. <u>Simonetti</u>, 998 F.2d at 41. While this enumeration is not etched in stone — each case is different, and the situations that may arise are simply too diverse to render a mechanical checklist desirable — the <u>Simonetti</u> factors often serve as a useful starting point.

-11-

Here, those factors strongly support the district court's chosen course of action. At each step in the deliberative process, the judge went to great lengths to meet with the attorneys, solicit their views, and share his thoughts with them. Prior to making critical decisions, he afforded both lawyers an opportunity to be heard and considered their insights. Moreover, the judge and jury exchanged notes on no fewer than nine separate occasions, and after each exchange, the judge hewed to our recommended praxis for the handling of such missives. See United States v. Hernandez, 146 F.3d 30, 35 (1st Cir. 1998) (discussing that praxis).

The record also reflects that the second and third Simonetti criteria were satisfied. The trial judge carefully studied all the available options and reflected not only on the parties' positions but also on the various ways in which he might permissibly nudge the jurors toward a verdict without unduly pressuring them. Although the option of a mistrial was available the second time that the jury declared itself at an impasse, the judge, in close consultation with counsel, eschewed that option in favor of a plan of action reasonably calculated to enhance the possibility of a verdict. Only when he concluded that all hope was lost did he discharge the jury.

In a case such as this, an appellate court's inquiry inevitably reduces to whether the district judge's declaration of a mistrial was reasonably necessary under all the circumstances. Considering what transpired here — the brevity of the trial, the relative simplicity of the questions confronting the jury, the length of deliberations, the fact that the court already had given a modified Allen charge without success, and the increasingly adamant manner in which the jurors announced that they were deadlocked — the judge's decision to declare a mistrial seems well within the realm of his discretion. Put another way, the record manifests the "high degree" of necessity that is required before the presiding judge lawfully can declare a mistrial, over the defendant's objection, in a criminal case. Barbioni, 62 F.3d at 7.

The appellant attempts to blunt the force of this reasoning by insisting that the judge's failure to give a second modified Allen charge before dismissing the jury constituted a failure to consider a viable alternative (and, thus, undermined both his finding of manifest necessity and his eventual declaration of a mistrial). This contention is meritless. After all, the requirement that a judge consider alternatives is not tantamount to a requirement that the judge employ a particular alternative upon demand.

Though useful in certain circumstances, a modified Allen charge — colloquially called a "dynamite charge" — is not risk-free. Jurors, particularly those who advocate minority views, may feel pressured to relinquish conscientiously-held beliefs. See Barone, 114 F.3d at 1304. We have warned that "the problem is exacerbated when the charge is given a second time, after the jury has already been told to reconsider and again has found itself in deadlock." Id. Thus, we have made it pellucid that the giving of successive Allen charges is an extraordinary measure — and one that should be shunned absent special circumstances. See id. at 1305.

Here, the record belies any claim that the trial judge abused his discretion in this regard. The appellant twice requested a second modified Allen charge — once on the early evening of June 26 and again at midday on June 27 — and the judge gave each of those requests serious consideration. He explained in some detail why he declined to take so unusual a step. We explain briefly why, on this record, the judge's declination was eminently reasonable.[1]

---

[1]The court's refusal, on June 26, to repeat the modified Allen charge need not detain us, as the court allowed deliberations to continue at that time. We therefore focus exclusively on the court's refusal to give the requested instruction on June 27 (when it discharged the jury and declared a mistrial).

By the end of the deliberations in this case, the prospects for unanimity were inauspicious — and the judge knew as much. See Keene, 158 F. Supp. 2d at 96. He also knew that the jurors had deliberated for about as long as they had heard evidence; that the dispute was sharply focused; that the first modified Allen charge had proven futile; and that the jurors had been increasingly emphatic in declaring themselves deadlocked.[2] The appellant, though ably represented, has identified no special circumstances favoring the utterance of yet another modified Allen charge. Nor is this an oversight: our independent scrutiny of the record leaves us unconvinced that any benefit likely to be derived from a second modified Allen charge would have offset the obvious risk of jury coercion inherent in pressing forward with such an instruction. Given this mise-en-scène, there is simply no basis for finding that the judge abused his discretion in refusing to reiterate the modified Allen charge.

In a last-ditch effort to stem the tide, the appellant argues that the district court erred in giving the modified Allen charge at too early a time. This argument is both too late and too little. First, the appellant consented to that

_____

[2]Indeed, the trial judge — a seasoned veteran — informed the lawyers "that for the first time in my professional career, all 12 jurors separately have signed the [deadlock] note."

instruction when it was given, and he cannot now be heard to complain that it should have been withheld.  See Barbioni, 62 F.3d at 7 n.2.  Second, the circumstances at that time were not inimical to the giving of such a charge, and we discern no error — plain or otherwise — in the trial court's decision to follow that course.

III.  CONCLUSION

We need go no further.  No less an authority than the Supreme Court has emphasized that "the trial court is in the best position to assess all the factors which must be considered in making a necessarily discretionary determination whether the jury will be able to reach a just verdict if it continues to deliberate."  Arizona v. Washington, 434 U.S. at 510 n.28.  This case is a paradigmatic example of that tenet:  the trial judge reached a plausible conclusion and acted upon it.  Since the record supports the view that manifest necessity existed for the district court's order, the appellant's post-trial motion to dismiss the indictment was properly denied.  Accordingly, the Double Jeopardy Clause does not bar the government from retrying the appellant.

**Affirmed.**