# United States Court of Appeals
## For the First Circuit

No. 05-1183

UNITED STATES OF AMERICA,

Appellee,

v.

ROBERT BROWN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Torruella, Dyk,* and Howard, Circuit Judges.

Robert C. Andrews for appellant.
Michael J. Conley, Attorney with whom Paula D. Silsby, United States Attorney and F. Mark Terison, Senior Litigation Counsel, were on brief, for appellee.

October 14, 2005

*Of the United States Court of Appeals for the Federal Circuit, sitting by designation.

**HOWARD**, **Circuit Judge**.  Robert Brown appeals the district court's refusal to dismiss his indictment on double jeopardy grounds following a trial that ended in a hung jury.  Brown contends that, although the jury was unable to reach a unanimous verdict, the court abused its discretion by declaring a mistrial before it had explored all of the potential alternatives. Accordingly, Brown argues, the government failed to establish the "manifest necessity" of declaring a mistrial.  We affirm.

## I.

Brown was charged with a single count of distribution of cocaine.  See 21 U.S.C. § 841(a)(1).  The government's case -- which primarily consisted of testimony from David Pease, a confidential informant who testified that Brown had sold him the cocaine, and Daniel Rousseau, a Special Agent of the Drug Enforcement Administration who testified that Brown had confessed to giving the cocaine to Pease -- was completed by early afternoon on the trial's first day.  On the morning of the second day, the defense called Robert Yankowsky, who testified that it was he, not Brown, who had unwittingly transferred an envelope containing the cocaine to Pease. Closing arguments were presented that same morning.  The defense argued that the government's entire case relied on Pease's testimony and that Pease, an admitted drug user who was cooperating with the police in return for leniency in his own criminal proceedings, was not a credible witness.

-2-

After receiving instructions, the jury retired to deliberate early that afternoon. Four hours later, and after the court had already received four notes from the jury concerning testimony and evidence, the court received the following note from the jury: "We are not close to a decision at this time and have members that need to make calls for child care. We also would like a sense of how long we will be required to deliberate prior to breaking for the evening."[1] After consulting with counsel, the court instructed the jury to continue deliberations for at least one more hour. An hour later, the jury sent a second note stating that it was unable to reach a unanimous verdict and would like to recess for the evening. The court granted the request.

Deliberations resumed the next morning, the third and final day of the trial. At 10:29 a.m. the court received the first note indicating that the jury might be deadlocked: "We are 11-1 and unable to move despite hours of work. Where do we go from here?" The court elicited proposals from counsel. The government requested an Allen charge, see Allen v. United States, 164 U.S. 492, 501 (1896) (upholding the practice of using a supplemental jury instruction to help a deadlocked jury reach unanimity), but defense counsel expressed concern that such an instruction might exert undue pressure on the minority juror. The court agreed and sent a note simply urging the jury to continue deliberations. An

---

[1]All of the jury's notes were signed by the foreperson.

-3-

hour later, the jury requested and obtained a read-back of Pease's and Yankowsky's testimony.  At 2:11 p.m., the jury sent a second note expressing deadlock: "We have one juror indicating a complete unwillingness, for any reason, to change his vote.  Where do we go from here?"  Again the court sought suggestions from counsel, and again the government requested an Allen charge.  This time defense counsel concurred with the government's request and the court delivered a modified Allen charge.

An hour-and-a-half after deliberations had resumed, the court, concerned by the lack of progress and a worsening snow storm, summoned counsel to discuss the next course of action.  The government requested that the court do nothing for at least another hour.  Defense counsel announced concern about the weather and that the jury had deliberated for a long time.  He suggested that the court inquire whether any progress was being made.  The court agreed and sent a note to the jury in accord with defense counsel's request.

At 4:04 p.m., the jury responded with a third note expressing impasse: "The juror who is not in agreement has advised we are not making any headway in convincing him of our position."  The court turned to counsel, and the government suggested for the first time that a mistrial might be appropriate.  Defense counsel argued that for a mistrial to be appropriate "we need to get the jury to come to a position where it says that it is, in fact,

hopeless."  Agreeing with defense counsel, the court suggested sending a note asking whether there was "any chance of reaching a verdict in this case?"  Defense counsel endorsed the court's proposed note, and it was sent to the jury.

The response, the final note from the jury, read: "As I do not believe the juror not in agreement is basing his decision on evidence, but on his own 'issues,' a verdict is not likely."  When the court asked defense counsel whether he had any other ideas, counsel requested an instruction specifically aimed at the holdout juror "requiring him to view the evidence."  The following colloquy ensued:

> THE COURT: I'm not going to do that. I'm not going to instruct a juror who is holding out -- that's undue force on a juror, I believe.  I don't think that's appropriate.
> Everybody has a right, obviously, to view the evidence.  That's what I told them in the Allen charge.  To point out to one juror that they have to do that, I don't think it's appropriate.
> Another alternative?
>
> [DEFENSE COUNSEL]: I have no other alternative.  I don't want a mistrial in this case.
>
> THE COURT: And what do you suggest?
>
> [DEFENSE COUNSEL]: If you can't come to a verdict, the only other option is a motion to dismiss it or acquittal, or for you to declare a mistrial.
> I don't want to agree to a mistrial. Obviously if it's hopeless, the jury has indicated it is, I guess the final decision is up to you.

-5-

THE COURT: Alright.  Government?

* * *

[GOVERNMENT COUNSEL]: I think, unless the Court feels that questioning this particular juror would be helpful --

THE COURT: I am concerned about doing that.  I think that puts a lot of pressure on one juror to change an opinion that juror may honestly hold, especially when the Judge is squeezing that juror to look at things differently.  I know what that jury is thinking, and the Judge's forcing me to change my mind, and I don't think that's right.  I won't.

[GOVERNMENT COUNSEL]: No other suggestion.  I would defer to the Court.

THE COURT: I'm going to declare a mistrial on this.  I believe that the jury is hopelessly deadlocked here.  It's plain as day, as the notes that we've received. Nothing has happened for a considerable period of time in terms of any progress.
The situation is simply that one person has a strongly held opinion, and they have indicated, as in the last note, they are not going to move and there is no need to continue this.
So I believe that the jury is deadlocked, and I believe it's manifest that a mistrial be declared, and I'm going to declare a mistrial in this case and reschedule this for trial, another trial.

Before declaring a mistrial, the court called the jury back to the courtroom.  The court then asked, first of the foreperson, and then of the jury collectively, whether there was a deadlock.  When the jurors answered affirmatively, the court declared a mistrial, excused the jury, and set a new trial date.

-6-

Brown filed a motion to dismiss shortly thereafter, arguing that the court had abused its discretion by hastily declaring a mistrial, by not engaging in the analysis required for a motion for judgment of acquittal, and by failing "to inquire of the jurors to determine their positions on guilt or innocence." At oral argument on the motion to dismiss, Brown additionally argued that the court could have dismissed the holdout juror for good cause and then entered the verdict of the eleven-member jury. The court denied the motion for substantially the same reasons that it declared the mistrial. This interlocutory appeal followed. See United States v. Keene, 287 F.3d 229, 232 (1st Cir. 2002) (stating that an interlocutory appeal is permitted when a defendant claims that further proceedings in the trial court constitute double jeopardy).

## II.

The Fifth Amendment to the Constitution provides that no person shall be "twice put in jeopardy of life or limb" for the same offense. Among other things, the double jeopardy clause protects defendants against "serial attempts by the government to convict a defendant on a single charge." Id. Without such protection, a defendant could be subjected to multiple trials, increasing the expense and embarrassment of the defendant, and enhancing the risk of convicting an innocent person. Id. In light of these concerns, "courts have construed the Double Jeopardy

-7-

Clause to bar retrial of a defendant after a mistrial ordered over the defendant's objection unless the mistrial was occasioned by manifest necessity." United States v. McIntosh, 380 F.3d 548, 553 (1st Cir. 2004) (footnote omitted). Although the government bears the burden of establishing manifest necessity, "a hung jury is the paradigmatic example of manifest necessity." Id.

When a motion to dismiss on double jeopardy grounds follows from a district court's declaration of a mistrial, we review the court's manifest necessity determination for an abuse of discretion. Keene, 287 F.3d at 233 (citing Arizona v. Washington, 434 U.S. 497, 514 (1978)). The court's findings of fact are reviewed for clear error, and legal determinations are reviewed de novo. McIntosh, 380 F.3d at 553-54. While our review of the manifest necessity determination is case-specific and cannot be discharged by resort to a mechanical checklist, see id. at 554, we have identified three factors that are particularly relevant: (1) whether the court provided counsel an opportunity to be heard; (2) whether the court considered alternatives to a mistrial; and (3) whether the court's decision was made after adequate reflection. United States v. Simonetti, 998 F.2d 39, 41 (1st Cir. 1993). See also Fed. R. Crim. P. 26.3 ("Before ordering a mistrial, the court must give each defendant and the government an opportunity to comment on the propriety of the order, to state whether that party consents or objects, and to suggest alternatives."). The

overarching question on appeal is "whether the district judge's declaration of a mistrial was reasonably necessary under all the circumstances." Keene, 287 F.3d at 234.

The record demonstrates that the district court was careful to satisfy each of the Simonetti factors before declaring a mistrial. Throughout the course of the jury's deliberations, and following the receipt of each note from the jury, the court sought suggestions from counsel for both sides. Not only did the court consider alternatives to a mistrial, but, with one exception, the court always acceded to defense counsel's requests: first withholding an Allen charge, then delivering it in modified form, and finally sending a pair of notes to the jury to confirm that there was no hope of a verdict. Only defense counsel's suggestion that the holdout juror be singled out for an additional instruction was rejected by the court, and even then the court gave defense counsel an opportunity to suggest an alternative.

The record also reflects the court's careful consideration of the situation before it declared a mistrial. The court was aware that the jury had deliberated for 13 hours in an uncomplicated case that essentially came down to choosing which of the witnesses to believe. The straightforward nature of the case, and the fact that the jury had communicated its deadlock on five occasions, including once in open court, support the conclusion that the court withheld the declaration of a mistrial until it was

evident that a unanimous verdict was not forthcoming. See Keene, 287 F.3d at 235 (no abuse of discretion in declaring a mistrial given the length of deliberations in comparison to the brevity of the trial and the simplicity of the issues, the fact that a modified Allen charge had proven unsuccessful, and "the increasingly adamant manner in which the jurors announced that they were deadlocked").

Where the Simonetti factors are satisfied, "we will reverse only if the district court applied an incorrect legal principle or made a meaningful error in judgment" in deciding to declare a mistrial. McIntosh, 380 F.3d at 554. Brown argues that four errors precipitated the district court's erroneous mistrial declaration: (1) placing the burden to establish the non-existence of manifest necessity on the defendant, (2) failing to examine the evidence under the judgment of acquittal standard, (3) declining the defense request to instruct the holdout juror to consider the evidence, and (4) refusing to voir dire the holdout juror to determine the basis of his position.[2] Brown focuses predominantly

_____

[2]We may quickly dispose of Brown's first two contentions. As to the first, suffice it to say that permitting defense counsel the opportunity to offer alternatives to a mistrial is not tantamount to placing the burden on defense counsel to prove the absence of manifest necessity. Such consultations are required by the Federal Rules of Criminal Procedure and are intended to "reduce the possibility of an erroneously ordered mistrial" to the "benefit [of] both the prosecution and the defense." Fed. R. Crim. P. 26.3 advisory committee's note 1993.

The contention that the court erred by failing to analyze the evidence under the standard for a judgment of acquittal, after

-10-

on the third and fourth alleged errors.  He asserts that, when a

court is faced with a choice between a defense request for a second

jury instruction or a mistrial, the court must issue the charge in

the case of an 11 to 1 jury panel.  Brown further argues that a

voir dire of the lone holdout juror could have revealed that the

juror was not deliberating in good faith.  If that were the case,

the court could have dismissed the juror for cause and allowed the

11 remaining jurors to return a verdict.  See Fed. R. Crim. P.

23(b)(3); United States v. Barone, 114 F.3d 1284, 1309 (1st Cir.

1997) (upholding an 11-juror verdict where one juror had been

dismissed for cause).  The court should have been aware of this

potential solution, Brown argues, because the final jury note

suggested that the holdout juror's vote was based on "his own

issues," not on the evidence.  Thus, Brown concludes, a potentially

viable alternative to mistrial existed, and the court abused its

discretion by not fully exploring that avenue.  See United States

v. Toribio-Lugo, 376 F.3d 33, 39 (1st Cir. 2004) (no manifest

necessity where there was a viable alternative to mistrial that the

district court failed to adequately explore).

---

defense counsel had suggested dismissal as an alternative to a
mistrial, also fails.  Although the court disregarded defense
counsel's request without explanation, it is readily apparent why:
the government had presented ample evidence to support a conviction
under 21 U.S.C. § 841(a)(1).  Pease's testimony, if credited, made
out the essential elements of the crime:  that Brown had "knowingly
and intentionally transferred cocaine from himself to someone
else."  United States v. Piper, 298 F.3d 47, 59 (1st Cir. 2002).

Our resolution of these two arguments is controlled by the deferential standard of review. Because of the delicacy inherent in dealing with a holdout juror, and because the cold record is a poor substitute for the district court's on-the-spot perceptions, we will defer to the court's determination so long as it is reasonable.[3] See McIntosh, 380 F.3d at 555-56. Here, aware that the jury was deadlocked by a single juror, the court was properly cautious in its employment of deadlock-breaking procedures, see McIntosh, 380 F.3d at 556 ("[T]he wisest course when a [holdout] juror's views are known is to proceed cautiously."); United States v. Hotz, 620 F.2d 5, 7 (1st Cir. 1980) (noting that a court must avoid putting pressure on the jury), and reasonably concluded that any further instruction, particularly one directed solely to the holdout, would have been unduly coercive, see Keene, 287 F.3d at 235 (giving a second modified Allen charge is "an extraordinary measure . . . that should be shunned absent special circumstances").

The argument that the holdout juror should have been questioned was not advanced by Brown before the district court.

---

[3]We reject Brown's argument that a court must accede to a defense request for a second modified Allen charge in a situation where a jury is deadlocked 11 to 1. Cf. Keene, 287 F.3d at 235 (although the district court is required to "consider" the suggestions of counsel, it is not required to "employ a particular alternative upon demand"). In our view, the appropriateness of deciding to give such a charge must be assessed on a case-by-case basis.

-12-

Indeed, only the government suggested such questioning. Defense counsel did not concur with the government's request, object when the court denied the government's request, or attempt to revive the request prior to the court's declaration of a mistrial. We thus face an arguable forfeiture of that claim.[4] See McIntosh, 380 F.3d at 555. Regardless, the claim fails.

Here again, the court believed that singling out the lone holdout for questioning would have been unduly coercive. This conclusion was not unreasonable, notwithstanding the note from the jury foreperson indicating her suspicion that the holdout juror's position was based on unspecified personal "issues." The district court was concerned that a juror, summoned individually for a colloquy with the judge, might feel pressured to change his position, and was entitled to prioritize the avoidance of coercion over an inquiry into the dynamic giving rise to the foreperson's cryptic note. We cannot say that the court's decision was an abuse of discretion. Cf. id. at 557 (finding that the district court acted within its discretion in "declining to probe further into [a holdout juror's] views").

### III.

For the foregoing reasons, we **affirm** the district court's denial of Brown's motion to dismiss.

---

[4]Indeed, as the holdout's position was unknown, defense counsel's silence on this issue may well have been intentional.