# United States Court of Appeals
## For the First Circuit

No. 20-1982

UNITED STATES,

Appellee,

v.

INYEMAR MANUEL SUAZO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Lynch, Circuit Judges.

Edward S. MacColl, with whom Thompson, MacColl, & Bass LLC, P.A. was on brief, for appellant.
Seth R. Aframe, Assistant United States Attorney, with whom John J. Farley, Acting United States Attorney, was on brief, for appellee.

September 20, 2021

**LYNCH**, **Circuit Judge**.  Inyemar Manuel Suazo brings this interlocutory appeal from the denial of his motion to dismiss his federal New Hampshire prosecution on double jeopardy grounds.  He purports to include in this interlocutory appeal the rejection of arguments raised in another motion to dismiss and a due process argument.  We hold that his double jeopardy rights never attached in the earlier Maine criminal proceedings, and we therefore affirm the denial of his motion to dismiss on double jeopardy grounds.  Because we lack jurisdiction over the other arguments he attempts to present, we dismiss those portions of his appeal without prejudice.

## I.  Background and Procedural History

On March 2, 2018, Suazo, along with Julio Mejia and Enyel Mejia-Pimental, was indicted in the District of Maine for conspiracy to distribute, and to possess with intent to distribute, 400 grams or more of fentanyl and cocaine.  A superseding indictment, issued on March 28, 2018, detailed more specifics of the alleged conspiracy, stating it began no later than April 7, 2016 and continued until March 14, 2018 in the Districts of Maine, New Hampshire, and Massachusetts.

The government requested pretrial detention, relying on the presumption of detention set forth in 18 U.S.C. § 3142.  Suazo was detained in Maine from approximately March 26, 2018 to February 27, 2019, and thereafter was released on bail.  On December 2,

2019, the parties selected but did not empanel a jury for a trial set to begin December 9, 2019. This trial never began and no jury was ever empaneled.

On December 4, 2019, the government moved for bail revocation. It alleged that Suazo had violated a condition of his release to "avoid all contact . . . with any person who is or may be a victim or witness in the investigation or prosecution," by having contact with Julio Mejia, who was also charged in the indictment. The government sought, and was granted, a warrant for Suazo's arrest. After Suazo's arrest, he moved to continue the December 9, 2019 trial date. The district court allowed the motion and continued the trial to February 3, 2020.

At the December 4 bail revocation hearing, Special Agent Steven Galbadis of the Drug Enforcement Administration testified that Mejia had told him that Suazo had approached Mejia on November 30, 2019, shown him a picture of Mejia's cooperation agreement on his phone, and told Mejia that if he testified against him he would post the cooperation agreement on the internet. Galbadis testified that Mejia told him that Mejia and Suazo met again the next day and Suazo again said that he would post the cooperation agreement online. On cross-examination, Galbadis stated that he was not aware of Suazo coming in contact with any witness in the case other than Mejia. Finding that the government had presented clear and convincing evidence that Suazo had violated a condition of release,

18 U.S.C. § 3148(b)(1)(B), and that Suazo was unlikely to abide by the conditions of release, 18 U.S.C. § 3148(b)(2)(B), the Maine district court revoked Suazo's release.

On January 31, 2020, the United States filed a Rule 48(a) motion to dismiss the superseding indictment on the grounds that "as of this date, the admissible portion of the available evidence would not permit a properly instructed jury to find beyond a reasonable doubt that the defendant is guilty of the charge alleged." In response, Suazo filed a motion for a judgment of acquittal or dismissal with prejudice. Suazo argued that, given his lengthy pretrial detention and the government's admission that it could not prove its case, due process required an acquittal or dismissal with prejudice rather than a dismissal without prejudice.

The Maine district court rejected Suazo's argument, giving the government the benefit of a presumption of good faith in its Rule 48(a) motion, which the court found Suazo had not rebutted. In its decision, the district court noted the government's statement that witnesses had abandoned their cooperation agreements in advance of trial; that, contrary to Suazo's argument, the government had not stated that it could never prove its case; and that the government had been prepared to go to trial in December 2019 before Suazo moved to continue the trial after his arrest for improper contact with a co-defendant. The

- 4 -

district court granted the government's motion to dismiss without prejudice and denied Suazo's motion for acquittal. Suazo appealed the dismissal and this court found that no extraordinary circumstances were present to warrant departure from the usual rule that defendants lack standing to appeal the dismissal of indictments, and dismissed the appeal.[1] United States v. Suazo, No. 20-1288 (1st Cir. Dec. 7, 2020). A jury was never sworn in the Maine case before it was dismissed.

On January 31, 2020, the same day that the government moved to voluntarily dismiss the superseding indictment in Maine, the United States filed a criminal complaint against Suazo alleging one count of distribution of fentanyl and one count of conspiracy, and aiding and abetting a conspiracy, to distribute fentanyl, in the New Hampshire district court. With respect to the conspiracy count, Count Two, the government specified that the conspiracy took place "[o]n or about January 18, 2018" in New Hampshire and Massachusetts and that the conspiracy involved 40 or more grams of fentanyl. The complaint listed no co-conspirators or additional specifics of the alleged conspiracy. On July 22, 2020 a grand jury issued an indictment setting forth the same charges and information.

---

[1] The court there also stated in reference to the instant appeal, "[t]his conclusion implies no views as to the issues raised in separate Appeal 20-1982, which will be adjudicated in the ordinary course".

Suazo filed a motion to dismiss the New Hampshire indictment as impermissibly vague as to both counts, and to dismiss Count Two as duplicitous to the extent that it charged both conspiracy and aiding and abetting a conspiracy. He then moved to dismiss Count Two on double jeopardy grounds, arguing that the government should be required to show that the conspiracy charged in the New Hampshire indictment differs from the conspiracy charged in the Maine indictment. At a hearing on October 7, 2020, the New Hampshire district court denied both of Suazo's motions to dismiss. During the hearing, the government specified that the entire conspiracy took place within a few days of the date given in the indictment. The court ordered the government to produce a bill of particulars, which it did on October 14, 2020, naming four other alleged members of the conspiracy.

Suazo now appeals the denial of his motion to dismiss on double jeopardy grounds and purports to appeal from other denials set forth below.

## II. Analysis

"The availability of double jeopardy protection is a constitutional question reviewable de novo." United States v. Fornia-Castillo, 408 F.3d 52, 68 (1st Cir. 2005) (citing United States v. Lanoue, 137 F.3d 656, 661 (1st Cir. 1998)). Defendants generally cannot immediately appeal interlocutory orders in criminal cases. United States v. Keene, 287 F.3d 229, 232 (1st

Cir. 2002).  An exception applies where a defendant can "mount a colorable claim that further proceedings in the trial court will constitute double jeopardy."  Id. (citing Abney v. United States, 431 U.S. 651, 662 (1977)).  The Double Jeopardy Clause, U.S. Const. amend. V, cl. 2, protects not only against double punishment but also against being "twice put to trial for the same offense."  Abney, 431 U.S. at 661.  The rights it protects would be "significantly undermined" if a defendant had to wait until the conclusion of a trial to appeal.  Id. at 660.  Jurisdiction is therefore proper to hear Suazo's appeal of his double jeopardy claim at this early stage.

The Fifth Amendment's prohibition on double jeopardy is premised on the principle that "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal, and . . . enhancing the possibility that even though innocent he may be found guilty."  Keene, 287 F.3d at 232 (quoting Green v. United States, 355 U.S. 184, 187-88 (1957)) (alteration in original).  A defendant's double jeopardy rights do not attach until the defendant is put to trial.  See United States v. Rosado-Cancel, 917 F.3d 66, 68 (1st Cir. 2019) (citing Serfass v. United States, 420 U.S. 377, 388 (1975)).  A trial commences for double jeopardy attachment purposes "when a jury is sworn or empanelled [sic] or, in a bench trial, when the

judge begins to hear evidence." United States v. Bonilla Romero, 836 F.2d 39, 42 (1st Cir. 1987) (citing Willhauck v. Flanagan, 448 U.S. 1323, 1325-26 (1980)); see also United States v. Tobin, 552 F.3d 29, 32 (1st Cir. 2009) ("This is mechanical and perhaps arbitrary, but it is the line that the Supreme Court has drawn and the circuits have followed.").

It is "[p]erhaps the most fundamental rule in the history of double jeopardy jurisprudence" that "'[a] verdict of acquittal . . . could not be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy, and thereby violating the Constitution.'" United States v. Martin Linen Supply Co., 430 U.S. 564, 571 (1977) (quoting United States v. Ball, 163 U.S. 662, 671 (1896)) (alterations in original). Whether a judgment of acquittal has been entered "is not to be controlled by the form of the judge's action." Id.; see also United States v. Bravo-Fernandez, 790 F.3d 41, 60 (1st Cir. 2015) ("Whether an order counts as an 'acquittal,' . . . is a question of substance and not of name."). Rather, the question is "whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." Martin Linen, 430 U.S. at 571. A dismissal without prejudice is not an adjudication on the merits. See United States v. Moller-Butcher, 723 F.2d 189, 191 (1st Cir. 1983).

Suazo acknowledges that a jury was never sworn in the Maine case. He argues that the dismissal in the Maine trial should be treated as an acquittal for double jeopardy purposes. He acknowledges that under our precedents a dismissal without prejudice constitutes neither a decision on the merits nor an acquittal. He nevertheless argues that the Due Process and Double Jeopardy Clauses mandate an evidentiary hearing to determine whether the government dismissed the Maine indictment in good faith and whether the conspiracies charged in the Maine and New Hampshire indictments are actually different conspiracies. This is because, he contends, the government dismissed the case under false pretenses. He argues his view that the government had initially had him detained pretrial in part by claiming it had overwhelming evidence of his guilt; the government never identified which witnesses refused to testify; the government never explained how its witnesses, including Mejia, could not be called to testify, given the government's grant of immunity and subpoena power; and Galbadis testified that Suazo had not reached out to other co-defendants. The crux of Suazo's argument is that the government abused his rights by subjecting him to lengthy pretrial detention pursuant to the Maine indictment that it ultimately voluntarily dismissed, only to bring (he argues) the same conspiracy charge the very same day in a different district.

As Suazo admits, a jury was never sworn, so jeopardy did not attach in that way. His arguments that the Maine dismissal was actually an acquittal are meritless, and the law clearly requires that we affirm the denial of his double jeopardy claim. Double jeopardy did not constructively attach as a result of the Maine district court's ruling. In arguing that the law should be extended to recognize a new form of double jeopardy, which attaches when a district court wrongly decides that the government acted in good faith in requesting voluntary dismissal under Rule 48(a), Suazo commits two errors. First, there is no such doctrine under double jeopardy law and we flatly reject the argument. Second, he essentially asks this court to allow a further appeal of the Maine district court's decision to dismiss the indictment. We have already declined to review the district court decision, see United States v. Suazo, No. 20-1288 (1st Cir. Dec. 7, 2020), and will not do so now under the guise of a double jeopardy claim where it is clear that jeopardy has not attached.[2]

In his reply brief, Suazo cites several cases where courts (outside this circuit) dismissed second indictments or overturned convictions because they determined prosecutors had

---

[2] We need not here decide whether the conspiracy charged in the New Hampshire case was the same as the conspiracy charged in the Maine case because double jeopardy did not attach either by the commencement of a trial or constructively through the district court's dismissal of the Maine indictment.

- 10 -

brought multiple indictments in order to harass the defendants. These cases do not support his double jeopardy claim; instead, they reinforce the proposition that Rule 48(a) protects defendants from prosecutorial harassment. See United States v. Derr, 726 F.2d 617, 618-19 (10th Cir. 1984) (finding prosecution's request for voluntary dismissal because it would "best meet the ends of justice" was insufficient justification for dismissal under Rule 48(a)); United States v. Salinas, 693 F.2d 348, 352-53 (5th Cir. 1982) (finding prosecution's voluntary dismissal of initial indictment in order to get a more favorable jury on a superseding indictment sufficient to overcome presumption of good faith in initial Rule 48(a) dismissal); United States v. Fields, 475 F. Supp. 903, 907-08 (D.D.C. 1979) (dismissing second indictment with prejudice where initial indictment was sought only to secure defendant's cooperation as a witness). None of these cases Suazo cites rely on the Double Jeopardy Clause.

Suazo asks us to extend double jeopardy protections, but, as the cases he cites show, the law already bars prosecutorial harassment. His claims are better characterized as claims of prosecutorial misconduct or harassment than double jeopardy. Such claims cannot be raised by way of an interlocutory appeal and are, in that respect, different from double jeopardy claims. See United States v. Hollywood Motor Car Co., Inc., 458 U.S. 263, 264-65 (1982) (holding that court of appeals lacked jurisdiction to hear

- 11 -

interlocutory appeal of order denying motion to dismiss for prosecutorial vindictiveness).

Therefore, the double jeopardy claim is the only claim over which we have interlocutory jurisdiction. Accordingly, we do not delve into any of Suazo's claims of prosecutorial misconduct, unfairness, or vagueness. See Abney, 431 U.S. at 663 (no interlocutory jurisdiction for appeal of motion to dismiss for insufficiency of indictment); see also United States v. Brizendine, 659 F.2d 215, 222 (D.C. Cir. 1981) ("If the appellants' due process claims are upheld on appeal after final judgment, the court can provide effective relief by ordering the indictment dismissed . . . , striking any additional charges that were improperly brought against the accused, requiring correction of the sentence, or reversing and remanding for reindictment and a new trial.")

We affirm the denial of the motion to dismiss on double jeopardy grounds and dismiss without prejudice the appeal as to the remaining arguments for lack of jurisdiction.