2007 ND 100

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Shane VOIGT, Defendant and Appellant.**

**No. 20060271.**

Supreme Court of North Dakota.

June 26, 2007.

Lloyd Clayton Suhr, Assistant State's Attorney, Bismarck, N.D., for plaintiff and appellee.

Thomas John Glass, Bismarck, N.D., for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶1] Shane Voigt appealed from a criminal judgment entered on a conditional plea of guilty under N.D.R.Crim.P. 11(a)(2) to gross sexual imposition. We conclude double jeopardy bars prosecution of Voigt for this charge, and we reverse and remand to allow him the opportunity to withdraw his guilty plea.

I

[¶2] On August 4, 2004, Voigt was charged with gross sexual imposition and an attorney was appointed to represent him. At a change of plea hearing on Sep-

tember 23, 2005, Voigt stated he did not want to change his plea, he no longer wanted his court-appointed attorney to represent him, and he would hire his own attorney. The district court judge told Voigt's court-appointed attorney that he was no longer Voigt's attorney of record and had no further responsibilities in the case. A jury trial was scheduled for January 12, 2006.

[¶ 3] On December 13, 2005, Voigt, while incarcerated for other crimes, wrote a letter to the district court stating he had intended to hire a lawyer to represent him on the gross sexual imposition charge but could not afford to do so. Voigt requested a new court-appointed attorney. The clerk of district court responded with a letter incorrectly stating that Voigt's first court-appointed attorney remained his attorney for the gross sexual imposition case.

[¶ 4] Voigt appeared at his January 12, 2006, trial without an attorney and told the district court judge he presumed his first court-appointed attorney was representing him at the trial based on the clerk of court's letter. Nevertheless, the court proceeded with voir dire and a jury was empaneled and sworn for the trial. After the jury was excused from the courtroom, Voigt again requested that an attorney be appointed to represent him, but the court denied the request and called a recess. During a meeting in the judge's chambers, the court informed the parties that "I'm not comfortable proceeding with this trial." The court explained:

I just don't think I have any choice in this matter. Had the clerk not sent that letter, I wouldn't even be hesitating but when the clerk of court sends somebody something, I think they have the right to rely on that and when I was talking my way through the record earlier, the more I talked, the more I realized that it wouldn't be—Mr. Voigt's constitutional rights would be violated. What would happen is we'd have a trial, if he's found guilty there'd be an appeal, it would be reversed and then we'd have to do this all over again. So what I'm going to do is discharge the jurors. I'm going to allow you Mr. Voigt to fill out an application for court-appointed attorney because at this point Mr. Hager is no longer your attorney. I also think I'm probably going to recuse myself from any further proceedings in this case because I have personal feelings about your behavior in this case Mr. Voigt that would make it so I probably couldn't be fair to you. The matter will be reset for trial as soon as possible.

[¶ 5] The prosecutor expressed "concern about double jeopardy since we've now had a jury sworn" and requested a ruling on the issue. The district court responded:

Right. I'm not declaring a mistrial because if I did that, because the jury has been sworn, there would be a double jeopardy issue. I am granting a continuance so that Mr. Voigt can secure counsel pursuant to his request to do so. I would also think, and maybe mistaken, that he would waive any double jeopardy argument because of his continuous requests for court-appointed attorney. There was no allegation of misconduct on the part of the State during the trial—or jury selection process. The issue was whether Mr. Voigt should have legal counsel. He appropriately and correctly raised that issue. I would note that he raised that issue prior to the jury being sworn as well and if that—I don't know if that's dispositive or not but the simple fact is the Court should have honored that request earlier and did not and therefore I believe that it would not be violative of Mr. Voigt's rights against double jeopardy to simply

continue the matter and reschedule it for trial.

After completion of the in-chambers conference, the district court discharged the jury and recused himself from any further proceedings in the case.

[¶ 6] A new attorney was appointed to represent Voigt, and on the morning of the March 29, 2006, rescheduled jury trial, before selection of a new jury was to occur, his attorney moved to dismiss the case on double jeopardy grounds. The district court denied the motion, concluding "[t]he motion technically is not timely ..." Voigt then entered a conditional plea of guilty, reserving his right to challenge the court's denial of his motion to dismiss.

## II

■ [¶ 7] The district court dismissed Voigt's motion to dismiss without reaching the merits of his double jeopardy argument because the court believed the motion was untimely.

■ [¶ 8] Double jeopardy is a defense that may be waived. *See State v. O'Rourke*, 544 N.W.2d 384, 385 (N.D.1996). In *O'Rourke*, at 385, a majority of this Court adopted the rule that a defendant's failure to raise a double jeopardy claim before trial does not result in a waiver, but the claim must be raised at some time in the proceedings before the district court. The majority declined to decide whether the defendant's claim made after trial and before the district court sentenced him was timely, and rejected the claim on the merits. *Id.* at 386. Two justices concurred in the result on the narrow ground that the defendant's claim was not timely because "[i]t is well established that a defendant must raise the double jeopardy issue before or during trial." *Id.* at 387 (Levine, J., concurring in the result).

[¶ 9] Under either the majority or minority opinions in *O'Rourke*, Voigt's double jeopardy claim made on the morning of his rescheduled jury trial was timely. The district court erred in dismissing his motion on this ground.

## III

[¶ 10] Voigt argues that double jeopardy bars further prosecution for gross sexual imposition because jeopardy had attached at his January 12, 2006, trial when the jury was empaneled and sworn, and then was discharged from the case by the district court on its own motion. The State contends Voigt's double jeopardy rights were not violated by the district court's "continuance" of the jury trial after the jury had been empaneled and sworn.

### A

■ [¶ 11] The double jeopardy provisions of the federal and state constitutions, and state law, prohibit successive prosecutions and punishments for the same criminal offense. *See* U.S. Const. amend. V; N.D. Const. art. I, § 12; N.D.C.C. § 29-01-07; *State v. McClary*, 2004 ND 98, ¶ 20, 679 N.W.2d 455. It is well settled that, in a jury trial, jeopardy attaches when the jury is empaneled and sworn. *See, e.g., State v. Martin*, 2001 ND 189, ¶ 10, 636 N.W.2d 447; *State v. Foley*, 2000 ND 91, ¶ 6, 610 N.W.2d 49; *State v. Hammond*, 498 N.W.2d 126, 128 (N.D.1993); *State v. Jensen*, 333 N.W.2d 686, 691 (N.D. 1983). Jeopardy attached in this case when the jury was empaneled and sworn.

■ [¶ 12] A defendant has a "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949). Nevertheless, when a trial has terminated before a verdict, the conclusion that jeopardy has attached only begins the inquiry whether the double jeopardy

clause bars retrial. *See State v. Linghor*, 2004 ND 224, ¶ 20, 690 N.W.2d 201. The double jeopardy clause does not always prohibit retrial when the first trial has terminated before a verdict is rendered. *See State v. Allesi*, 216 N.W.2d 805, 814 (N.D.1974). Although the district court refrained from using the term "mistrial" in terminating the proceedings and referred to its action as a "continuance," the court's termination of the trial on its own motion in contemplation of further proceedings must be reviewed under the same standard as if it had granted a motion for a mistrial. *See Lee v. United States*, 432 U.S. 23, 31, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977) (no distinction between dismissals and mistrials for purposes of double jeopardy analysis); 5 W. LaFave, J. Israel, and N. King, *Criminal Procedure* § 25.2(f) (1999) (dismissals are equivalent to mistrials); 2 D. Rudstein, C. Erlinder, and D. Thomas, *Criminal Constitutional Law* ¶ 11.01[3][h], at p. 11–108.2 (2006) ("A trial judge's action constitutes a 'dismissal' when it terminates the proceedings against the defendant on a basis unrelated to his factual guilt or innocence"). In *Linghor*, at ¶¶ 21–22, we noted that "manifest necessity and the ends of public justice are the basic controlling principles in determining whether a mistrial was properly granted so that a defendant may be retried," and quoted from the Supreme Court's landmark decision in *United States v. Perez*, 9 Wheat. 579, 22 U.S. 579, 580, 6 L.Ed. 165 (1824):

> We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is im- possible to define all the circumstances, which would render it proper to inter- fere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favor of the prison- er. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office.

The "*Perez* doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).

[¶ 13] Each case in which a double jeopardy violation is asserted must turn upon its own facts. *See State v. Berger*, 235 N.W.2d 254, 258 (N.D.1975); *Allesi*, 216 N.W.2d at 814. While there is no "mechanical formula" for determining whether termination of a criminal trial is supported by manifest necessity, *Illinois v. Somerville*, 410 U.S. 458, 462, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973), the United States Court of Appeals for the First Circuit has identified a variety of nonexclusive factors based on Supreme Court precedent that are helpful for analyzing the issue. These include: (1) whether counsel were afforded an opportunity to be heard on the issue; (2) whether alternatives to a mistrial were explored; and (3) whether the judge's decision was made after suf- ficient reflection. While this enumer- ation is not etched in stone—each case is

different, and the situations that may arise are simply too diverse to render a mechanical checklist desirable—the[se] factors often serve as a useful starting point.

*United States v. Keene,* 287 F.3d 229, 234 (1st Cir.2002) (citation omitted); *see also United States v. Brown,* 426 F.3d 32, 36–37 (1st Cir.2005); *United States v. Toribio–Lugo,* 376 F.3d 33, 39 (1st Cir.2004); *United States v. Simonetti,* 998 F.2d 39, 41 (1st Cir.1993). "The overarching question on appeal is 'whether the district judge's declaration of a mistrial was reasonably necessary under all the circumstances.'" *Brown,* 426 F.3d at 37 (internal citation omitted).

▮ [¶ 14] The entire in-chambers discussion on discharging the jury is contained on approximately three pages of the trial transcript. The prosecutor was allowed to comment on the issue and, other than expressing a concern about double jeopardy, simply stated, "I respect and appreciate the Court's position on this. It's honestly kind of what I had anticipated." Voigt, who continued to request the assistance of a court-appointed attorney during this discussion, was told twice by the district court judge "don't say anything," and was finally warned, "[y]ou want contempt, then keep talking." Voigt had no meaningful opportunity to be heard on the issue.

[¶ 15] Alternatives to discharging the jury do not appear to have been considered by the court. One obvious alternative would have been to release the jury, rather than discharge the jury, and reconvene the jury for trial after an attorney had been appointed to represent Voigt. *See State v. Bonner,* 361 N.W.2d 605, 612 (N.D.1985) (district court's grant of 55–day continuance during jury trial and continuing with same jury not reversible error); *Kuk v. State,* 602 So.2d 1213, 1219 (Ala.Crim.App.

1992) ("While we certainly do not condone the practice of striking and swearing a jury only to release that jury with instructions to report back approximately a month later, such an occurrence, in and of itself, simply does not subject a defendant to double jeopardy" because "the appellant was tried by the 'particular tribunal' that was originally empaneled").

[¶ 16] It also does not appear that the trial judge's decision was made after sufficient reflection. The trial proceedings, including voir dire, lasted less than two hours. Only three pages of the transcript contain the discussion about discharging the jury. The record strongly suggests that the court had chosen his course of action in the spur of the moment without considering any alternative courses of action, perhaps after discovering Voigt's request for counsel and the clerk's letter. The judge began the discussion by pointing out "I just don't think I have any choice in this matter." The judge did not engage in the "scrupulous exercise of judicial discretion" required before discharging the jury. *Jorn,* 400 U.S. at 485, 91 S.Ct. 547.

[¶ 17] Considering all of the circumstances, we conclude that discharging the jury was not manifestly necessary in this case even though it was done for the benefit of the defendant.

**B**

▮ [¶ 18] Mistrials declared with the defendant's consent generally do not bar later prosecutions. *See United States v. Dinitz,* 424 U.S. 600, 607, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). In *Toribio–Lugo,* 376 F.3d at 40 (citations omitted), the court explained:

In this context, consent may be express, such as where the defendant himself moves for a mistrial without having been goaded into doing so by misconduct

attributable to the government. The requisite consent may also be implied from a defendant's acts or failures to act, such as where the defendant sits silently by and does not object to the declaration of a mistrial even though he has a fair opportunity to do so. Even so, the implication of consent is not lightly to be indulged.

Courts have taken different approaches in determining whether consent can be implied by mere silence on the part of the defense. *See, e.g., Love v. Morton,* 112 F.3d 131, 138 (3rd Cir.1997), and cases collected therein; J. Theuman, Annot., *Former jeopardy as bar to retrial of criminal defendant after original trial court's sua sponte declaration of a mistrial—state cases,* 40 A.L.R.4th 741, § 8 (1985), and cases collected therein. We need not resolve the broader issue here, because even if mere silence may constitute implied consent under some circumstances, those circumstances are not present in this case.

[¶ 19]   When Voigt first renewed his request for an attorney in these proceedings the trial judge told him "if you continue to do that and it disrupts the trial, I'm going to find you in contempt of court." At the beginning of the in-chambers conference, Voigt informed the court:

> I'll continue to ask for legal counsel through the entire thing so you might as well just give me contempt of court now because I will not sit down there. I mean if you want to deny me legal counsel, so be it, but I will not sit down there and listen to it. I have no representation. I don't know what questions to ask. I don't know what to do.

The trial judge told Voigt "[d]on't say anything else for now," and when Voigt again attempted to speak, the judge told him "I said don't say anything. You want contempt, then keep talking." Voigt was silent during the remainder of the discussion on discharging the jury.

[¶ 20]   We conclude, as a matter of law, that under these circumstances Voigt did not impliedly consent to discharging the jury.

## C

■■■ [¶ 21]   The State argues that Voigt may be constitutionally retried under the "continuing jeopardy" doctrine.

■■■ [¶ 22]   The "continuing jeopardy" doctrine applies when criminal proceedings against a defendant have not run their full course. *See Justices of Boston Mun. Court v. Lydon,* 466 U.S. 294, 308, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984); *Price v. Georgia,* 398 U.S. 323, 326, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970). Under the "continuing jeopardy" doctrine, "the protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy." *Richardson v. United States,* 468 U.S. 317, 325, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984). In *United States v. Shinault,* 147 F.3d 1266, 1276 (10th Cir.1998), the United States Court of Appeals for the Tenth Circuit addressed the apparent conflict between the terminating-event requirement under the "continuing jeopardy" doctrine and a defendant's right to a particular tribunal, and concluded:

> In order to determine whether the original proceeding ever "terminated," we look to the interests of the Double Jeopardy Clause. *See Breed [v. Jones,* 421 U.S. 519, 534, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) ]. "[T]he continuing jeopardy principle appears to rest on an amalgam of interests—e.g., fairness to society, lack of finality, and limited waiver, among others." *Price v. Georgia,* 398 U.S. 323, 329 n. 4, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970).

The question of whether jeopardy has objectively "terminated" should be analyzed in terms of the policies of the Double Jeopardy Clause, namely its concern that repeated trials may subject a defendant to embarrassment, expense and ordeal and compel him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty. *Jeopardy may be said to have terminated only when the posture of a trial in some objective sense leaves that defendant in such a position that resumption of proceedings would implicate those policies.*

*Lydon,* 466 U.S. at 320, 104 S.Ct. 1805, 80 L.Ed.2d 311 (Brennan, J., concurring in part and concurring in the judgment) (emphasis added) (citations and internal quotation marks and alterations omitted); *see also Lovato v. New Mexico,* 242 U.S. 199, 201, 37 S.Ct. 107, 61 L.Ed. 244 (noting that mere irregularity of procedure does not implicate the Double Jeopardy Clause). Only if the trial before the new tribunal reasonably implicates the policies described above has the first proceeding terminated. Only then do we proceed to the manifest necessity analysis.

*See also* 5 W. LaFave, J. Israel, N. King, *Criminal Procedure* § 25.1(e), at 646–47 (2d ed.1999) ("while a mistrial declared consistent with double jeopardy principles does not terminate jeopardy, as recognized in *Richardson,* a mistrial that violates those principles will be viewed otherwise").

[¶ 23] In this case, the policies of the double jeopardy clause were implicated by discharge of the jury. The jury had been empaneled and sworn, and a second trial would impermissibly subject Voigt to prosecution for the same conduct. We conclude the discharge of the jury was a terminating event, and the "continuing jeopardy" doctrine is inapplicable. *See Walck v. Edmondson,* 472 F.3d 1227, 1241 (10th Cir.2007) (mistrial declaration after jury had been sworn and two witnesses testified was a terminating event under the "continuing jeopardy" doctrine because it implicated the policies of the double jeopardy clause).

## IV

[¶ 24] We conclude double jeopardy bars reprosecution of Voigt for this gross sexual imposition charge. We reverse the criminal judgment and remand to allow Voigt an opportunity to withdraw his guilty plea.

[¶ 25] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.