# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2020 ND 37

City of West Fargo,                                     Plaintiff and Appellee

  v.

Mandie Le Ekstrom,                                 Defendant and Appellant

No. 20190079

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Susan Lynne Bailey, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by McEvers, Justice, in which Chief Justice Jensen, Justices VandeWalle, Crothers, and Tufte joined. Justice Tufte filed an opinion concurring specially, in which Chief Justice Jensen joined.

Stephen R. Hanson II (argued), Assistant City Attorney, and Kelsey Stock (on brief), third-year law student, under the Rule on Limited Practice of Law by Law Students, West Fargo, ND, for plaintiff and appellee.

Luke T. Heck, Fargo, ND, for defendant and appellant.

**McEvers, Justice.**

[¶1]   Mandie Le Ekstrom appeals from a criminal judgment entered after a jury found her guilty of driving under the influence.  We conclude the district court did not err in denying her motion to dismiss on state and federal constitutional double jeopardy grounds.  We further conclude, however, the court erred in sentencing her because the jury did not find her chemical breath test result was .16 or greater.  We affirm her conviction but reverse and remand for resentencing.

I

[¶2]   In February 2018, the City of West Fargo charged Ekstrom in municipal court with driving under the influence after a chemical breath test indicated she was driving with an alcohol concentration in excess of the legal limit.  She requested the case be transferred to district court for a jury trial.  During the first trial in October 2018, Ekstrom moved for a mistrial after the City's police officer testified to the chemical breath test results before the chemical test results had been offered into evidence.  The court reserved its ruling, allowing the City to proceed and offer the chemical test result into evidence.

[¶3]   When the City offered the chemical breath test, however, Ekstrom objected arguing the City failed to offer evidence that the Intoxilyzer 8000 used in her case was installed by a field inspector under the approved method for operating the machine.  *See* N.D.C.C. § 39-20-07(5); *Ell v. Dir., Dep't of Transp.*, 2016 ND 164, 883 N.W.2d 464.  The court sustained her objection and granted her mistrial motion based on the City's failure to provide proper foundation for the test result's admission.

[¶4]   The district court gave the City ten days to schedule and notice a new trial date.  Ekstrom objected on double jeopardy grounds and moved to dismiss the charge.  She subsequently filed her motion to dismiss the case, arguing further prosecution would violate her double jeopardy rights.  The City resisted the motion.  After an October 29, 2018, hearing, the district court denied her

motion to dismiss. This Court also denied her petition for a supervisory writ, *see Ekstrom v. Bailey, et al.*, No. 20180438. The district court held a second trial in February 2019.

[¶5] At the second trial the district court denied Ekstrom's motions in limine and allowed the City to introduce additional evidence and expert witness testimony not offered during the first trial. With proper foundation the court admitted the chemical breath test result into evidence.

[¶6] Ekstrom objected to the elements in the jury instructions on grounds the City's complaint only charged her with driving under the influence and did not charge her with aggravated DUI. She further argued the jury was required to make a finding regarding whether her alcohol concentration exceeded .16. The court overruled her objection, concluding the .16 finding was not an essential element of aggravated DUI.

[¶7] The jury found Ekstrom guilty of driving under the influence. In sentencing her, the district court elevated her conviction from DUI to aggravated DUI. A criminal judgment was subsequently entered.

II

[¶8] Ekstrom argues the district court erred in denying her motion to dismiss on state and federal constitutional double jeopardy grounds.

[¶9] The double jeopardy provisions of the federal and state constitutions and state law prohibit successive prosecutions and punishments for the same criminal offense. U.S. Const. amend. V; N.D. Const. art. I, § 12; N.D.C.C. § 29-01-07. In a jury trial, jeopardy attaches when the jury is empaneled and sworn. *See Day v. Haskell*, 2011 ND 125, ¶ 8, 799 N.W.2d 355. However, double jeopardy does not always prohibit retrial when the first trial has terminated before a verdict is rendered. *See id.* at ¶ 9; *State v. Voigt*, 2007 ND 100, ¶ 12, 734 N.W.2d 787. "Each case in which a double jeopardy violation is asserted must turn upon its own facts." *Id.* at ¶ 13. A mistrial that is declared with the defendant's consent, such as when the defendant moves for a mistrial without

having been goaded into doing so by misconduct attributable to the prosecutor, generally does not bar a later prosecution. *Voigt*, at ¶ 18.

[¶10] In *Oregon v. Kennedy*, 456 U.S. 667, 675-76 (1982), the Supreme Court explained:

> Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. A defendant's motion for a mistrial constitutes "a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact." *United States v. Scott*, 437 U.S. 82, 93, 98 S. Ct. 2187, 2195, 57 L.Ed.2d 65 (1978). Where prosecutorial error even of a degree sufficient to warrant a mistrial has occurred, "[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error." *United States v. Dinitz, supra*, 424 U.S., at 609, 96 S. Ct., at 1080. Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.

"[W]e do hold that the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." *Kennedy*, at 679.

[¶11] Ekstrom argues that double jeopardy barred the retrial in her case. Although she moved for the mistrial, she asserts the City's acts and omissions bar her retrial. She contends double jeopardy protects a defendant from a second prosecution when prosecutorial overreach provokes a mistrial and affords the prosecution a more favorable opportunity to convict a defendant. *See Kennedy*, 456 U.S. at 674. Ekstrom also asserts a broader understanding of what constitutes prosecutorial overreach or harassment, relying in part on

*Downum v. United States*, 372 U.S. 734, 736 (1963), and *U.S. v. Dinitz*, 424 U.S. 600, 611 (1976). We note however, one court has said that to the extent these cases invoke a broader "harassment" standard, they were overruled by *Kennedy*. *See State v. Butler*, 810 A.2d 791, 796-97 (Conn. 2002).

[¶12] Despite the fact that Ekstrom made the motion for mistrial, she argues the City not only caused the mistrial, but also acquiesced to the motion by not attempting to cure the foundational deficiency or objecting to the motion. She contends the City deliberately asked the broad question of the police officer, for which a highly prejudicial answer was foreseeable, *i.e.*, the inadmissible chemical test result. She argues this Court should not adopt the *Kennedy* standard and that, even if adopted, *Kennedy* and subsequent law does not preclude dismissal in this case. She essentially asserts the City's conduct in asking the general question of the police officer goaded or provoked her to move the district court for a mistrial.

[¶13] Ekstrom further contends the North Dakota Constitution may provide even greater protections under its double jeopardy provision. *See State v. Herrick*, 1999 ND 1, ¶ 22, 588 N.W.2d 847. For this proposition she relies on Justice Levine's reasoning in her dissent in *State v. Jacobson*, 545 N.W.2d 152, 156 (N.D. 1996). Ekstrom asserts the City "clearly" acted with indifference towards the mistrial committing prosecutorial overreach at a minimum, if not outright misconduct.

[¶14] In *Jacobson*, it was argued that North Dakota's constitution provided greater protections for purposes of double jeopardy than under federal constitutional law. 545 N.W.2d at 153. We declined to overrule settled law, stating the framers of our state constitution did not intend an interpretation different than the Double Jeopardy Clause of the United States. *Id.* (citing *State v. Allesi*, 216 N.W.2d 805, 817-18 (N.D. 1974)). Other than citing to Justice Levine's dissenting opinion, Ekstrom offers no new legal or factual support that North Dakota's double jeopardy clause was intended to provide more protection than the double jeopardy clause under the federal constitution.

[¶15] We hold the double jeopardy standard under *Kennedy* is the proper standard in North Dakota. *See Voigt*, 2007 ND 100, ¶ 18, 734 N.W.2d 787. To the extent Ekstrom now argues about the requisite intent under the *Kennedy* standard to provoke her into moving for a mistrial, she did not raise that in the district court. Rather, she argued that double jeopardy applied, regardless of the City's intent, because the City's misconduct caused the mistrial. She argued the City and the testifying police officer knew or had reason to know not to discuss the specific chemical test results, when the test itself was inadmissible at trial without the correct foundational documentation.

[¶16] Here, the facts and circumstances presented in this case do not bar Ekstrom's retrial. As asserted by the City, the police officer was the City's first witness early in the trial, it had no reason to provoke a mistrial at that early stage, and it did not intend to provoke Ekstrom's mistrial motion. The City asserts the officer's unsolicited testimony was, at most, an unintended mistake. Moreover, the City's lack of an explicit objection to the mistrial does not establish an intent to provoke a mistrial. We conclude Ekstrom has not established the City's conduct at issue was intended to "goad" her into moving for a mistrial. *See Voigt*, 2007 ND 100, ¶ 18, 734 N.W.2d 787.

[¶17] We therefore conclude Ekstrom's motion for mistrial precludes double jeopardy from applying and she has not established the City's conduct in asking a general question of the police officer goaded or provoked her into moving for the mistrial. We further hold her attempt to argue the North Dakota Constitution affords greater protection for double jeopardy is unpersuasive.

[¶18] Under the standard adopted in *Kennedy*, as applied to the facts and circumstances in this case, we conclude Ekstrom's retrial was not barred by double jeopardy.

### III

[¶19] Ekstrom argues the district court erred in elevating her conviction to an aggravated first offense DUI without providing jury instructions requiring the jury to find whether her chemical breath test was .16 or greater. She contends

the court erred by denying her demand for the jury to decide whether her chemical breath test was .16 or greater.

[¶20] In *State v. Watkins*, 2017 ND 165, ¶ 9, 898 N.W.2d 442, this Court explained:

> In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the United States Supreme Court held that a fact used to enhance a criminal sentence beyond the statutory maximum for the crime committed must be decided by a jury beyond a reasonable doubt. *See also Clark v. State*, 2001 ND 9, ¶¶ 3, 5, 621 N.W.2d 576. In *Alleyne v. United States*, 133 S.Ct. 2151, 2155 (2013), the Supreme Court extended the reasoning in *Apprendi* and held that any fact leading to the imposition of a mandatory minimum sentence must also be found by a jury beyond a reasonable doubt.

However, because "[n]either *Apprendi* nor *Alleyne* errors constitute structural errors requiring automatic reversal[,] . . . these errors may be waived through the doctrine of invited error." *Watkins*, at ¶ 13 (citations omitted).

[¶21] Ekstrom was prosecuted under W. Fargo Mun. Ord. § 13-0203, which the parties concede is an equivalent of N.D.C.C. § 39-08-01. Ekstrom argues that under both sections an individual convicted of a first offense DUI is subject to minimum mandatory penalties, which are dependent on finding an aggravating factor: whether the defendant's chemical test result yielded an alcohol concentration of at least .16. *See* W. Fargo Mun. Ord. § 13-0203(5)(a); N.D.C.C. § 39-08-01(5)(a).

[¶22] Ekstrom contends that neither the ordinance nor the statute provides for a court to take "judicial notice" of a heightened alcohol concentration when evaluating the defendant's sentence, as the court does with prior convictions under N.D.C.C. § 39-08-01(3). She therefore argues the factfinder must find the convicted person's alcohol concentration was in excess of .16 to be convicted of an aggravated first offense under the ordinance. She asserts the court made a finding on its own, taking a factual finding away from the jury, and while she was sentenced within the permissible sentencing range for a class B

misdemeanor, she was still entitled to have the jury make this factual determination.

[¶23] The City responds that this Court should either affirm the sentence or, in the alternative, remand for resentencing and essentially concedes the jury should have decided whether Ekstrom's alcohol concentration was at least .16 to subject her to the ordinance's mandatory minimum sentence. The City contends, however, Ekstrom waived the issue by not properly articulating it to the district court. The City asserts this Court could affirm by concluding the district court did not substantially rely on the mandatory minimum provision. The City also contends, however, that if this Court cannot affirm the sentence on this record, the proper remedy is to remand for resentencing, in which the district court would not consider the mandatory minimum sentencing provision in resentencing her.

[¶24] Here, while not an element of the criminal offense, whether Ekstrom's chemical breath test was .16 or greater is an aggravating fact for purposes of the enhanced sentence. The district court found "the best evidence presented to the Court is that Ms. Ekstrom had a blood alcohol content of .167 within two hours after operating a motor vehicle." The jury as the factfinder did not specifically find this aggravating fact. We therefore reverse and remand to the district court for resentencing without consideration of the mandatory minimum under the ordinance.

IV

[¶25] The judgment is affirmed in part, reversed in part, and the case is remanded for resentencing.

[¶26] Lisa Fair McEvers
     Gerald W. VandeWalle
     Daniel J. Crothers
     Jerod E. Tufte
     Jon J. Jensen, C.J.

7

**Tufte, Justice, concurring specially.**

[¶27] I agree with the majority opinion and have signed it. I write separately to emphasize that we may not prospectively bind ourselves to follow future as yet unannounced interpretations of the Fifth Amendment when we interpret art. I, § 12. *State v. Jacobson*, 545 N.W.2d 152, 153 (N.D. 1996) (VandeWalle, C.J., concurring specially) (stating that it is one thing to conclude the framers of the North Dakota Constitution meant to adopt the existing interpretation of the Fifth Amendment, but emphasizing that "[i]t is something else to 'buy-in,' in 1974 or now, to a future and as yet unannounced construction"). The Majority, at ¶ 15, says it holds that "*Kennedy* is the proper standard in North Dakota." An interpretation of the Fifth Amendment's Double Jeopardy Clause persuades us here to interpret art. I, § 12 in the same way despite differences in language and history that suggest the possibility of different applications in some scenarios not yet presented to this Court. Simply because we have previously interpreted a clause in our Constitution to carry a meaning consistent with more recent interpretations of a similarly worded clause in the United States Constitution does not mean that it must always be so.

[¶28] We are periodically asked to interpret the state constitution to 'provide greater protection' compared to a related provision in the U.S. Constitution. Ekstrom makes this request here. The argument presented in this case is more developed than arguments in some other matters in which the state constitutional claim appears to have been an undeveloped alternative argument. In my view, Ekstrom's argument here fails to persuade because it lacks support in the primary sources and authorities our cases have relied on when interpreting the North Dakota Constitution.

[¶29] Ekstrom relies on Surrogate Judge Beryl Levine's dissent in *Jacobson*. In particular, Ekstrom refers us to passages emphasizing additional double jeopardy protections provided in state statutes and suggests that public policy reasons weigh in favor of our providing greater double jeopardy protections under our state constitution. I find these reasons unpersuasive. Statutes adopted contemporaneously with a constitutional provision may reflect a legislative understanding of the scope of the constitutional provision,

8

particularly when an argument is made that the statute conflicts with a newly-enacted constitutional provision. *City of Bismarck v. Fettig*, 1999 ND 193, ¶ 11, 601 N.W.2d 247. Such legislative enactments may be informative about the scope of a related constitution provision because we have presumed the Legislative Assembly makes its own assessment of the constitutionality of a bill when it passes through the legislative process. *See State ex rel. Heitkamp v. Hagerty*, 1998 ND 122, ¶ 20, 580 N.W.2d 139.

[¶30] The statutes cited by Judge Levine to which Ekstrom refers us do not appear to have been enacted close in time to the 1889 adoption of art. I, § 12 (then art I, § 13). *Jacobson*, 545 N.W.2d at 158 (Levine, S.J., dissenting). And the fact that the Legislative Assembly has provided additional double jeopardy protections in statute is perfectly consistent with a narrow reading of the double jeopardy clause. One may infer the Legislative Assembly believed these statutes protect more broadly than the constitutional protection or there would have been little reason to enact them. Ekstrom's citation to Judge Levine includes her reference to *State v Hunt*, 91 N.J. 338, 450 A.2d 952 (1982), for the proposition that later legislative expressions of a state's public policy may justify a court's interpretation of the state constitution. Legislative statements of public policy require a contextual connection to the meaning of a constitutional provision when it was adopted, to properly inform a judicial interpretation of the provision. I fail to see how the cited statutes illustrate what meaning the framers and adopters of art. I, § 12 would have intended in enacting its words and phrases.

[¶31] The appellant also argues that the doctrine developed under the Fifth Amendment, as expressed in *Oregon v. Kennedy*, 456 U.S. 667 (1982), is "a confusing and subjective test." Members of this court have previously expressed in other contexts that where the United States Supreme Court, in interpreting the United States Constitution, has developed confusing or dubious doctrine, we ought to consider developing our own doctrine under the North Dakota Constitution that may be more suitable to circumstances in North Dakota and clearer in its application for both the state and its citizens. *See, e.g., State v. Hendrickson*, 2019 ND 183, ¶ 23, 931 N.W.2d 236 (Crothers, J., specially concurring) (stating the court should consider "in an appropriate

9

case where we were asked, whether we should decouple our federal and state constitutional analysis in the area of driving under the influence investigative stops"); *State v. Gardner*, 2019 ND 122, ¶ 16, 927 N.W.2d 84 (referring to the "sometimes murky way *Katz* [*v. United States,* 389 U.S. 347 (1967),] has influenced search and seizure cases").

[¶32] If this Court is unsatisfied with the doctrinal tests developed under related federal provisions, we remain free to independently develop our own doctrine under the state constitution. Advocates before the court should be prepared to provide persuasive reasons to do so.

[¶33] In recent years, litigants have sought to persuade this Court to adopt an independent interpretation or doctrine with arguments that too often reach no further than policy arguments supported by "because you can." Counsel would aid the Court by starting with the text of our constitution. The provision at issue here reads: "No person shall be twice put in jeopardy for the same offense." N.D. Const. art. I, § 12. Identify whether the text differs from a related federal provision. Here, there are textual differences. The Fifth Amendment reads in pertinent part: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." Is any textual difference material to the issues presented here? Here, appellant has not argued there is a textual difference between the two provisions that is material to the issue before us. Nor is one readily apparent.

[¶34] Here, counsel has provided no evidence about what the original public meaning of the text was when it was adopted in 1889. Appellant has not referred us to any authority prior to 1889, to include judicial or scholarly interpretations of the Fifth Amendment, that might illuminate how the people who drafted and adopted our constitution in 1889 might have understood the meaning of the disputed terms. *Pelkey v. City of Fargo*, 453 N.W.2d 801, 804 (N.D. 1990) ("The sole object in construing a constitutional provision is to ascertain and give effect to the intention and purpose of the framers and the people who adopted it, and such intention and purpose are to be found in and deduced from the language of the constitution itself.") Dictionaries and leading treatises from the period may be helpful to illustrate what a term of art such

as "twice put in jeopardy" had been interpreted and understood to mean by the people who adopted the North Dakota Constitution in 1889.

[¶35] For example, Thomas M. Cooley is widely regarded as the leading scholar of state constitutions during the late 1800s. Paul D. Carrington, *The Constitutional Law Scholarship of Thomas McIntyre Cooley*, 41 Am. J. Legal Hist. 368 (1997). He spoke to the North Dakota Constitutional Convention on that topic. *Journal of the Convention* at 52 (noting "Judge Cooley addressed the Convention."); Bismarck Wkly. Trib., Jul. 19, 1889, at 8 (reprinting Cooley's remarks to the convention). Regarding double jeopardy, Cooley wrote that if "the jury are discharged with the consent of the defendant expressed or implied . . . the accused may again be put upon trial upon the same facts before charged against him, and the proceedings had will constitute no protection." Thomas M. Cooley, Constitutional Limitations 401-02 (5th ed. 1883). The cases cited by Cooley on this point do not appear to provide guidance on the specific issue presented in this case.

[¶36] Pre-1889 interpretations are particularly relevant because when we have adopted language from an identifiable source into our constitution, whether in 1889 or in a later amendment, we have taken the prior authoritative interpretations with the text. *State ex rel. Linde v. Hall*, 35 N.D. 34, 53, 159 N.W. 281 (1916) (applying the "general rule" "that where one state borrows a constitutional provision from another state that has previously been construed by the courts of the latter state, such construction is presumed to have been adopted along with the provision"). Here, if there were an identifiable source for the language at issue, a judicial interpretation from that jurisdiction would be highly persuasive. Ekstrom has not argued there are relevant authoritative interpretations of a source text here. It appears likely that there was no single source for this provision, as Herbert L. Meschke & Lawrence D. Spears, *Digging for Roots: The North Dakota Constitution and the Thayer Correspondence*, 65 N.D. L. Rev. 343, 379-80 (1989), suggests that "constitutions generally" are the publicly-known sources for provisions in the declaration of rights.

[¶37] To date, we have not been persuaded that the doctrine developed under the Fifth Amendment Double Jeopardy Clause would reach a different result or provide a different test or method of analysis than a faithful reading of our state constitution. *State v. Linghor*, 2004 ND 224, ¶ 19, 690 N.W.2d 201; *State v. Kelly*, 2001 ND 135, ¶ 11, 631 N.W.2d 167; *State v. Allesi*, 216 N.W.2d 805, 817 (N.D. 1974). Our decision here continues that consistent treatment. When interpreting the North Dakota Constitution, we are not bound to follow in lockstep federal doctrine implementing similar federal provisions. Counsel may assist the Court and serve their clients by marshalling any available evidence that may illuminate what meaning was intended when adopting a particular provision.

[¶38] Jerod E. Tufte
Jon J. Jensen, C.J.