# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2025 ND 204

State of North Dakota,                                        Plaintiff and Appellee

v.

Joshua Brock Martinez,                                    Defendant and Appellant

### Nos. 20250190 & 20250191

Appeals from the District Court of Williams County, Northwest Judicial District, the Honorable Charles B. Neff, Jr., Judge.

AFFIRMED.

Opinion of the Court by Bahr, Justice.

Nathan K. Madden, Assistant State's Attorney, Williston, ND, for plaintiff and appellee.

Kiara C. Kraus-Parr, Grand Forks, ND, for defendant and appellant.

**Bahr, Justice.**

[¶1]  Joshua Martinez appeals from two criminal judgments entered by the district court following jury verdicts finding Martinez guilty of multiple offenses. He argues the district court abused its discretion by replacing an empaneled juror with an alternate juror. We affirm the judgments.

I

[¶2]  In two separate cases, the State charged Martinez with two counts of attempted murder, three counts of reckless endangerment with extreme indifference, terrorizing an adult victim, fleeing a peace officer in a vehicle creating risk of death or serious bodily injury, two counts of violation of a domestic violence protection order, unlawful possession of a firearm, discharge of a firearm within city limits, and refusal to halt. The district court consolidated the cases and held a seven-day jury trial in January 2025. The jury found Martinez guilty of all counts except one count of reckless endangerment.

[¶3]  On the first day of trial, after jury selection, the clerk swore in twelve jurors and two alternate jurors. After the first day of trial, Juror 9 approached and interacted with a member of the gallery. The State observed Juror 9 greet, talk to, and hug the individual. The State learned the individual was Jacob Martinez, Martinez's relative. At the start of the second day of trial, the State brought the issue to the district court's attention. The court noted that, "as the jurors were leaving," it saw Juror 9 "shake hands and be chummy with someone in the back of the courtroom." The court stated it did not know who the person was, but that it would bring Juror 9 in and inquire of him.

[¶4]  The district court brought in Juror 9 and questioned him about his interactions with Jacob Martinez. Juror 9 stated he knew Jacob Martinez from work, but he was unaware Jacob Martinez and Martinez were related until after Juror 9 approached Jacob Martinez and asked what he was doing there. Juror 9 stated Jacob Martinez responded that Martinez is his cousin. When asked by the court, Juror 9 stated he could be fair and impartial.

1

[¶5]   After the district court and the State questioned Juror 9, the State asked the court to strike Juror 9. Martinez objected, indicating he was satisfied with Juror 9's responses, believed Juror 9 could be fair and impartial, and saw no reason to exclude him. The court stated it believed Juror 9 did not know Jacob Martinez and Martinez were related. Martinez confirmed Jacob Martinez was his cousin, stating, "Legally, cousin, but, yes, my brother." The court expressed its concern with excusing Juror 9 because they were only on day two of a nine-day trial and only had two alternates. The court then stated, "I certainly understand the State's concern. In fact, I'm still vacillating in my head whether—what to do with him because I have serious concerns over the interaction."

[¶6]   After a short recess, the court returned and stated:

> Court took under advisement the State's request to dismiss Juror Number 9, Mr. [D.W.]. I would note that defense believes that he had been properly rehabilitated and requested that he remain and that I deny the motion. I will say it's an extremely close call. I believe that he is truthful in his answers, but I have concern—let me put it this way. I noticed it, and I had concerns yesterday.
> We do have two alternates. I will note the objection of the defense, but I am going to dismiss Mr. [W.], and we will go from there.

[¶7]   The district court brought Juror 9 back in the courtroom and dismissed him, stating, "for everything that I've said on the record, I'm just going to dismiss you." Juror 9 responded, "Sounds fair enough. I mean, don't want to take any chances." The court responded, "Yep. That is a big part of what's going through my mind[.]"

## II

[¶8]   Martinez argues the district court abused its discretion by replacing an empaneled juror with an alternate. Martinez argues the court's action violated the Double Jeopardy Clause.

[¶9]   Martinez asserts the United States Constitution guarantees a defendant the right to a fair and impartial trial by his peers under the Sixth and Fourteenth

Amendments. Once jeopardy has attached, Martinez contends, a defendant has a valued right to have his trial completed by a particular tribunal. Martinez asserts jeopardy attached to his case because the jury had been empaneled and sworn. He argues, by substituting an empaneled juror, without any misconduct by the substituted juror, the district court exceeded the scope of N.D.R.Crim.P. Rule 24(c)(1), impermissibly altered the makeup of the jury, and violated his due process rights.

A

[¶10] Rule 23(b), N.D.R.Crim.P., provides the number of jurors that sit in a case. "In felony cases, a jury consists of twelve qualified jurors unless this rule provides otherwise." N.D.R.Crim.P. 23(b)(1). Rule 24(c)(1), N.D.R.Crim.P., provides the court may empanel "up to four alternate jurors to replace any jurors who are unable to perform or who are disqualified from performing their duties." "Alternate jurors must have the same qualifications and be selected and sworn in the same manner as any other jurors." N.D.R.Crim.P. 24(c)(2)(A). Under Rule 24, alternate jurors are selected at the same time, are subject to the same qualifications, and take the same oath as other jurors. Under Rule 24, a jury is not empaneled until all jurors, including any alternates, have been qualified, accepted, and sworn. Alternate jurors hear the same evidence and are bound by the same rules and instructions as other jurors. Alternate jurors are available and qualified to participate as jurors until the court discharges them.[1]

[¶11] "The double jeopardy provisions of the federal and state constitutions and state law prohibit successive prosecutions and punishments for the same criminal offense." *State v. Borland*, 2021 ND 52, ¶ 5, 956 N.W.2d 412 (citing U.S. Const. amend. V; N.D. Const. art. I, § 12; N.D.C.C. § 29-01-07). "The standard of review for constitutional issues, such as double jeopardy, is de novo." *Id.* "In a

---

[1] Rule 24(c)(3), N.D.R.Crim.P., provides "[t]he court may retain alternate jurors after the jury retires to deliberate." If the court retains alternate jurors while the jury deliberates, "[t]he court must ensure that a retained alternate does not discuss the case with anyone until that alternate replaces a juror or is discharged. If an alternate replaces a juror after deliberations have begun, the court must instruct the jury to begin its deliberations anew." N.D.R.Crim.P. 24(c)(3).

jury trial, jeopardy attaches when the jury is empaneled and sworn." *City of W. Fargo v. Ekstrom*, 2020 ND 37, ¶ 9, 938 N.W.2d 915. However, "the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial." *State v. Isom*, 2018 ND 60, ¶ 12, 907 N.W.2d 340 (quoting *Illinois v. Somerville*, 410 U.S. 458, 467 (1973)). "Each case in which a double jeopardy violation is asserted must turn upon its own facts." *State v. Voigt,* 2007 ND 100, ¶ 13, 734 N.W.2d 787.

[¶12] "[T]he protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy." *Voigt*, 2007 ND 100, ¶ 22 (quoting *Richardson v. United States*, 468 U.S. 317, 325 (1984)). A court replacing a juror with an alternate juror does not implicate double jeopardy because it does not terminate the original jeopardy. *See Sartawi v. Gomez*, 32 F.3d 572, *1, 1994 WL 390016 (9th Cir. 1994) ("[T]he replacement of sworn jurors with alternates is not, in general, an event which terminates jeopardy. Thus, it cannot offend the Double Jeopardy Clause.") (cleaned up); *United States v. Shinault*, 147 F.3d 1266, 1276 (10th Cir. 1998) (explaining, after a juror had been excused and an alternate subsequently empaneled, if the district court had sworn an alternate along with the original twelve jury members the issue of double jeopardy was avoided); *State v. Cook*, 338 Md. 598, 614 (1995) ("substitution of an alternate juror did not place the defendant twice in jeopardy 'because the unity of the original jury was not destroyed'" (quoting *People v. Johnson*, 200 Cal. App.3d 1553, 1563 (1988)); *People v. Burgess*, 206 Cal. App.3d 762, 766, (1988) (although the trial court violated a statute by permitting the prosecution to peremptorily challenge a juror and substitute an alternate juror after the entire jury, including alternates, had been empaneled and sworn, the trial court's error did not result in double jeopardy); 21 Am. Jur. 2d *Criminal Law* § 335 (2025) ("In a jurisdiction that provides for alternate jurors in addition to the regular panel, double jeopardy is not involved where the court discharges one member of the regular panel and substitutes an alternate."); W. J. Dunn, Annotation, *Constitutionality and Construction of Statute or Court Rule Relating to Alternate or Additional Jurors or Substitution of Jurors During Trial,* 84 A.L.R.2d 1288, § 3[a] (1962) ("substitution of one of such alternates for a regular member of the jury . . . has consistently been upheld by

4

the courts, usually against the objections that . . . the use of an alternate juror after the discharge of a regular juror placed the defendant in double jeopardy").

[¶13] The district court empaneled twelve jurors and two alternates. All fourteen jurors underwent the selection process and had been present for the entire trial. The court replacing a juror with an alternate did not implicate double jeopardy. *See Sartawi*, 32 F.3d at 572 (stating replacement of jurors with properly selected alternates "does not trench upon a defendant's right to have his trial completed by a particular tribunal"); *Cook*, 338 Md. at 614 ("'[The] valued right to have his trial completed by a particular tribunal' should not be expanded to apply to a situation where a seated juror is replaced with an alternate who has undergone the same selection process as the seated jurors and has been present for the entire trial.").

B

[¶14] A district court's decision to replace a juror with an alternate is reviewed for abuse of discretion. *See United States v. Picardi*, 739 F.3d 1118, 1122 (8th Cir. 2014) (explaining if an objection was made, "[w]e generally review a district court's decision to replace a juror for abuse of discretion."); *United States v. De Oleo*, 697 F.3d 338, 341-42 (6th Cir. 2012) ("A district court may replace a juror with an alternate when a juror is either unable or disqualified to perform juror duties. . . . We review the district court's decision for abuse of discretion.") (cleaned up); *State v. Nyonteh*, 24 N.W.3d 271, 282 (Minn. 2025) ("We review a district court's decision to excuse a seated juror to ensure the fairness of a trial for an abuse of discretion."); *Hobbs v. United States*, 18 A.3d 796, 800 (D.C. 2011) ("We review the trial court's decision to replace a juror with an alternate for abuse of discretion. . . . However, after jeopardy attaches, a trial court may remove a juror only if the juror is unable or disqualified to perform juror duties") (cleaned up); *Martin-Dorm v. State*, 259 Md. App. 676, 691 (2023) ("A trial judge's decision to remove a seated juror is a discretionary one and will not be reversed on appeal absent a clear abuse of discretion or a showing of prejudice to the defendant.").

[¶15] After jeopardy attaches, the district court may only replace jurors who are "unable to perform or who are disqualified from performing their duties." N.D.R.Crim.P. 24(c)(1); *see also United States v. Carpenter*, 140 F.4th 733, 745 (5th Cir. 2025) ("But after their selection, jurors may be excused only if unable to perform or . . . disqualified from performing their duties.") (cleaned up). Rule 24(c)(1) is silent as to when jurors become unable or disqualified to perform their duties. *See* 84 A.L.R.2d 1288, § 7 ("Statutes providing for the use of alternate jurors are generally silent on the method to be used in determining when a juror should be excused and an alternate substituted for him."). Therefore, courts must evaluate each case individually. *See Martin-Dorm*, 259 Md. App. at 691 ("The Rule does not define the circumstances under which a juror shall become unable or disqualified to perform his duties. Each case must be evaluated on a case-by-case basis.") (cleaned up).

[¶16] Here, the district court did not make an explicit determination Juror 9 was disqualified. However, the court provided enough reasoning on the record for this Court to understand its determination. *Caster v. State*, 2019 ND 187, ¶ 6, 931 N.W.2d 233 ("When presented with conclusory or missing findings of fact, this Court ordinarily remands unless we can discern the rationale for the result reached[.]"); *see also United States v. Rodriguez*, 573 F.2d 330, 332 (5th Cir. 1978) ("[T]he trial judge, in his sound discretion, may remove a juror and replace him with an alternate juror whenever facts are presented which convince the trial judge that the juror's ability to perform his duty as a juror is impaired. . . . There must be some sound basis upon which the trial judge exercised his discretion.") (cleaned up); *Cook*, 338 Md. at 615-16 ("Where there is enough support to find that the trial judge's determination to remove a juror was not arbitrary, we should give deference to the trial court's decision.").

[¶17] The district court stated, "I certainly understand the State's concern. In fact, I'm still vacillating in my head whether—what to do with him because I have serious concerns over the interaction." After a short recess, the court continued, "I believe that he is truthful in his answers, but I have concern—let me put it this way. I noticed it, and I had concerns yesterday." After calling in Juror 9, the court concluded "for everything that I've said on the record, I'm just going to dismiss [Juror 9]."

6

[¶18] A specific determination by the district court that Juror 9 was disqualified as a juror based on his relationship with Martinez's cousin would have been preferable. However, based on the record, this Court can discern the basis of the court replacing Juror 9 with an alternate juror—the court had concerns over the relationship between Juror 9 and Martinez's cousin. The district court expressed its concern on the record, determined Juror 9 was disqualified, and replaced him with an alternative juror as authorized by N.D.R.Crim.P. Rule 24(c)(1).

[¶19] The district court did not abuse its discretion by dismissing Juror 9 based on his relationship with Martinez's cousin and their interaction in court. *See Martin-Dorm*, 259 Md. App. at 690-92 (explaining the court did not abuse its discretion on second day of trial by dismissing, over defendant's objection, an empaneled juror who had social media ties with defendant's family, and replacing juror with alternate).

### III

[¶20] The district court did not violate the Double Jeopardy Clause by replacing an empaneled juror with an alternate juror. The court did not abuse its discretion by replacing Juror 9 with an alternate juror due to Juror 9's association with a relative of Martinez. We affirm the criminal judgments.

[¶21] Jon J. Jensen, C.J.
 Daniel J. Crothers
 Lisa Fair McEvers
 Jerod E. Tufte
 Douglas A. Bahr

7